**In re NEW YORK ASBESTOS LITIGATION.**

**In re John B. CLARKSON, John Consorti, Carmine Guerriero, Edward Klein, Alfred Luchnick, Harold Molloy, Zachariah Morgan, Bernard Plastrik, Peter Pulizzi, Walter Strafford, Vincent Tabolt, Michael Mullin and Richard Smolowitz, Plaintiffs.**

**Nos. 88 Civ. 6403 (RWS), 88 Civ. 8133 (RWS), 92 Civ. 0763 (RWS), 92 Civ. 3900 (RWS), 92 Civ. 2402 (RWS), 91 Civ. 2992 (RWS), 92 Civ. 7333 (RWS), 91 Civ. 7414 (RWS), 92 Civ. 7283 (RWS), 92 Civ. 7332 (RWS), 92 Civ. 7284 (RWS), 92 Civ. 6377 (RWS) and 92 Civ. 1113 (RWS).**

United States District Court,
S.D. New York.

Feb. 17, 1993.

McCarter & English by Richard P. O'Leary, Newark, NJ, for defendants ACandS, Inc. and Keene Corp.

Heidell, Pittoni, Murphy & Bach, P.C., New York City (Michael D. Shalhoub, of counsel), for defendant The Anchor Packing Co.

Budd Larner Gross Rosenbaum Greenberg & Sade, Short Hills, NJ (William D. Sanders, of counsel), for defendant Childers Products Co., Inc.

Barry, McTiernan & Moore, New York City (Suzanne M. Halbardier, of counsel), for defendant John Crane, Inc.

Fogarty & Fogarty, P.C., Mineola, NY (Edward Fogarty, Jr., of counsel), for defendant J.P. Stevens Inc.

Carter, Ledyard & Milburn, New York City (Lawrence F. Carnevale and Jonathan F. Mack, of counsel), for defendant Foster Wheeler Energy Corp.

Flemming, Zulack & Williamson, New York City (James B. Lynch and Cynthia B. Rubin, of counsel), for defendants W.R. Grace & Co. and The Flintkote Co.

Gregg J. Borri, New York City, for defendant Georgia–Pacific Corp.

Stryker, Tams & Dill, Newark, NJ (William S. Tucker, Jr., of counsel), for defendant Uniroyal, Inc.

Marshall and Bellard, Garden City, NY (Joseph A. Brown, of counsel), for defendant Vimasco Corp.

Levy Phillips & Konigsberg, New York City (Robert I. Komiter, of counsel), for plaintiffs.

## OPINION

SWEET, District Judge.

Plaintiffs in thirteen separate asbestos tort actions before this court have moved against eighty-eight defendants and third party defendants pursuant to Rule 42(a), F.R.Civ.P., to consolidate their actions.[1]

---

1. The following defendants have filed papers in opposition to the motion to consolidate: Uniroyal, Inc., J.P. Stevens, Inc., Vimasco Corp., and Childers Products Co. Inc. (named only in *Consorti*); W.R. Grace (named only in *Consorti, Luchnick, & Molloy*); John Crane, Inc. (named only in *Strafford* and *Tabolt*); the Keene Corporation (named only in *Consorti, Luchnick, Molloy* and *Pulizzi*); Foster Wheeler Energy Corporation (named in five actions, *Clarkson, Molloy, Pulizzi, Strafford* and *Tabolt*); ACandS, Inc. (named in eight actions, *Mullin, Morgan, Plastrik, Molloy, Luchnick, Clarkson, Guerriero,* and *Klein*) the Georgia–Pacific Corporation, Anchor Packing Co., and the Flintkote Company.

For the reasons set forth below, the motion is granted in part and denied in part.

*Prior Proceedings*

These actions are thirteen of the so-called "asbestos cases" that have been supervised by the Multi–District Litigation (MDL) Panel for discovery and pre-trial purposes. All of these actions were originally filed in the Southern District of New York. Eight of these cases were transferred by order of the MDL Panel to the Honorable Charles Weiner of the Eastern District of Pennsylvania, and have been transferred back to this court by his Amended Order dated December 16, 1992 on the basis of hardship to the plaintiffs (who allege malignancies and asbestosis) arising out of trial delay. All relevant pretrial procedures have been completed. The other five have been filed in the Southern District of New York and transferred to this Court as related cases.

This motion was heard on January 21, 1993, and considered fully submitted on January 23, 1993.

*Facts*

These cases consist of thirteen actions: *Clarkson*, 92 Civ. 1113; *Consorti*, 92 Civ. 6377; *Guerriero*, 92 Civ. 7284; *Klein*, 92 Civ. 7332; *Luchnick*, 92 Civ. 7283; *Molloy*, 92 Civ. 7414; *Morgan*, 92 Civ. 7333; *Plastrik*, 91 Civ. 2992; *Pulizzi*, 92 Civ. 2402; *Strafford*, 92 Civ. 3900; *Tabolt*, 92 Civ. 0763; *Mullin*, 88 Civ. 8133; and *Smolowitz*, 88 Civ. 6403.

Seven of the Plaintiffs are deceased (Mullin, from lung cancer; Clarkson, Luchnick, Pulizzi, Tabolt, from mesothelioma; Klein and Morgan, from causes unspecified, through they allege their malignancies were due to exposure to asbestos) and the actions are being handled by their estates.

Harold Molloy, a smoker, claimed exposure from his work as a pipefitter's helper from 1943 to 1944 at Bethlehem Steel on Staten Island and at the Todd Shipyard in Brooklyn; he alleges that his exposure to asbestos is the cause of his gastric cancer.

Richard Smolowitz alleges injury from asbestosis, resulting from exposure to taping materials, pipe insulation, and asbestos-containing cement in the course of his work as a taper from 1954 to 1980. Smolowitz has alleged that he worked at Seaview Village in 1966, at the Chatham Towers in lower Manhattan, and the Mitchell Lama projects in Rockaway in the late 60's and 70's, at Flatlands Avenue, in Brooklyn and Roosevelt Raceway from 1970–72, and at the Woolworth Building, 55 Water Street, Sloan Kettering Hospital, the New York Coliseum, Lincoln Center, the Exxon Building, 666 Fifth Avenue, 90 Park, the Empire State Building and at the Port Authority's World Trade Center. He also alleges that he was exposed to these asbestos-laden materials during his work at private residences from 1973 to 1979 and at Brooklyn College from 1979–1980.

Alfred Luchnick, a nonsmoker, claimed exposure during his work as a welder at the Brooklyn Navy Yard, from 1940 to 1945; his estate claims that his lung cancer was due to his exposure to asbestos.

Seven of the Plaintiffs bring claims arising out of their contracting mesothelioma, a cancer alleged to be linked to asbestos. John Clarkson, a nonsmoker who worked as a shipfitter's helper and railroad trackman specialist, claims exposure from asbestos-containing wirecovering, pipecovering, gloves and mats from 1943 to 1945 while working at the Federal Shipyard in Kearney, New Jersey and from 1951 to 1973 in the course of his repair work for the New York City Transit Authority at its Westchester Square Yard. John Consorti, a smoker and 40% owner of Veteran Pipecovering, a family insulator business, claims exposure to twenty-five asbestos-containing products, including pipe-covering, felt, roofing paper, mastics, cloth, sewing twine, adhesive, and asbestos-containing cement. Consorti has sued the largest number of defendants, and forty-one defendants are named only in this case. Bernard Plastrik, a smoker, claims exposure to pipecovering, asbestos-containing cement and (evidently metal) sheets during his work as a tinsmith's helper at the Todd Shipyard in New Jersey and the Erie Basin in Brooklyn from 1946 to 1948. Peter Pulizzi, a smoker, claims exposure due to his employment as

a shipfitter and exposure to pipecovering at the Brooklyn Navy Yard from 1942 to 1945. Walter Strafford, a smoker, claims exposure to asbestos in 1962 from packing materials and gaskets, during work dismantling and refurbishing valves in a sheetmetal shop. Vincent Tabolt, a pipesmoker, claims exposure between 1965 and 1972 due to loading and unloading bags of asbestos-containing cement and apparently other substances at the Lowville Farmer's Cooperative Incorporated, New York. Michael Mullin, a smoker, claimed exposure from work as a plumber and boiler installer from 1959 to 1986.

The Plaintiffs Carmine Guerriero, Edward Klein, and Zachariah Morgan have filed standardized complaints which do not describe their diseases, occupations or alleged exposure.

The Defendants oppose the motion to consolidate on the grounds that the individual issues predominate in these cases and that consolidation will make jury confusion inevitable and prejudice the defendants. Of the eighty-eight defendants, twenty-three have been named in nine or more of the actions. Consolidation should not work to their disadvantage, and might actually produce a savings of their time and energy. Aside from the 41 defendants who have been named only in *Consorti,* those defendants who have been named in four or fewer of the actions have not been named in the same actions. It is impossible to accommodate all these defendants by consolidating smaller groups of plaintiffs: to arrange it so that certain of these defendants will face only one trial invariably means other defendants will be split up among separate trials. Since the degree of overlap makes it impossible to consolidate any particular subgroup or subgroups of plaintiffs in a way which would accommodate the interests of all the defendants, the large number of defendants and their distribution among the actions lends itself to consolidation rather then to severance.

*Discussion*

### 1. Standards Under Rule 42(a)

Rule 42(a), Federal Rules of Civil Procedure, provides:

When actions involving a common question of law or facts are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

 The Rule grants broad discretion to the district courts to manage their dockets efficiently by expediting trials and eliminating unnecessary repetition and confusion. *See Hendrix v. Raybestos–Manhattan, Inc.,* 776 F.2d 1492, 1495 (11th Cir. 1985); *Dupont v. Southern Pacific Co.,* 366 F.2d 193, 195 (5th Cir.1966), *cert. denied,* 386 U.S. 958, 87 S.Ct. 1027, 18 L.Ed.2d 106 (1967). The court may order consolidation upon its own motion, and the consent of the parties is not required. 7 *Wright & Miller's Federal Practice* § 2383 at 262 & 259 (1971 & Supp.1992). Actions involving the same parties are likely candidates for consolidation, but a common question of law or fact is enough; if a common question exists, court have often consolidated actions despite differences in parties. *Id.,* § 2384 at 263–64.

 Consolidations of tort actions sharing common questions of law and fact is commonplace, *Johnson v. Celotex Corp.,* 899 F.2d 1281 (2d Cir.1990), but not unlimited, *see Arnold v. Eastern Air Lines, Inc.,* 712 F.2d 899 (4th Cir.1983) (en banc) *cert. denied,* 464 U.S. 1040, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984). Considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial. *Johnson,* 899 F.2d at 1285. However, a court should consider the extent to which it can alleviate the risks of prejudice and confusion by giving cautionary instructions to the jury and by controlling the manner in which the claims and defenses are submitted to the jury for deliberation. *Hendrix,* 776 F.2d at 1495.

### 2. Special Considerations Governing Consolidations of Asbestos Cases

These thirteen asbestos cases are part of the universe of all federal asbestos cases

referred to the Honorable Charles Weiner by order of the Multi–District Litigation Panel, *In re Asbestos Products Liability Litig. (No. VI),* 771 F.Supp. 415 (J.P.J.L. 1991). All are represented to be hardship cases involving malignancies or serious illness and requiring early trial. Even though only eight have actually been transferred up here from Philadelphia, Judge Weiner's original order transferred all thirteen, and it is the understanding of this Court that the other five would in due course have been transferred to the Eastern District of Pennsylvania pursuant to the MDL transfer of all cases in July, 1991, and then returned pursuant to Judge Weiner's December 16, 1992 amended order.

Under the common questions of law and fact standards of Rule 42(a), this Court is not consolidating the case of Molloy, who alleges that his exposure to asbestos is the cause of his gastric cancer. However, the remaining twelve should be consolidated under Rule 42(a) in the context of the mass tort litigation which resulted in their initial referral to Judge Weiner.

The asbestos litigation in this country is presently the largest mass toxic tort in the United States. *In re Joint Eastern & Southern Dist. Asbestos Litig.,* 125 F.R.D. 60, 63 (E.D. & S.D.N.Y.1989) (Sweet, D.J.) (hereinafter *Drago* ). The precise number of occupationally exposed workers in the United States is uncertain, but estimates have ranged from seven to fourteen million alive in 1980, and estimate of "substantial" exposures range from 70,000 to four million. Peter H. Schuck, *The Worst Should Go First: Deferral Registries in Asbestos Litigation,* 15 *Harv. J.L. & Pub. Pol'y* 541, n. 5 (1992).

Most asbestos claims have been filed in jurisdiction linked to particular industrial sites: shipyards, tire factories, oil fields, etc., although that may now be changing:

"In 1984, when the Federal Judicial Center held its first asbestos conference, asbestos litigation in the federal courts was largely concentrated in only four district courts. Since that time, however, asbestos cases have infiltrated virtually every federal district."

*Report of the Judicial Conference Ad Hoc Committee on Asbestos Litigation,* 9 (1991), *quoted in In re Asbestos Products Liability Litig. (No. VI),* 771 F.Supp. 415, 419 (J.P.M.L.1991). *See also In re Joint Eastern & Southern Dist. Asbestos Litig.,* 129 B.R. 710, 748 (E.D.N.Y.1991) (Weinstein, J.) (hereinafter *In re Johns–Manville I*), *vacated and remanded, In re Joint Eastern & Southern Dist. Asbestos Litig.,* 982 F.2d 721 (2d Cir.1992) (Newman, J.) (hereinafter *In re Johns–Manville II*). The shipyards and construction industries in New York have given rise to most of the claims in the Southern and Eastern Districts. These New York asbestos claims were initially barred by the state statute of limitation, but in 1986 New York amended its statute of limitations to start the running of the statute from the discovery of the disease, *see* New York Toxic Tort Reform Act of 1986, L.1986, ch. 682, § 2 (codified at C.P.L.R. § 214–c (McKinney 1990)). New York's state and federal court were soon inundated with previously barred asbestos suits.

The vast numbers of plaintiffs have compelled courts to depart from the traditional tort model. Mass torts (or more properly megatorts, in a situation such as asbestos)[2] have put such a strain on the system that, despite "the persistent judicial 'skepticism' that usually leads to refusals to bring or certify class actions in mass tort cases," courts have begun reevaluating the potential benefits of aggregate treatment against the tort's system's virtually certain costs. David Rosenberg, *Comment: Of End Games and Openings In Mass Tort Cases: Lessons from a Special Master,* 69

---

**2.** "The single phrase 'mass tort' obscures a huge difference between two classes of cases. In one class are cases in which the number of claimants is between a few hundred and several thousand [usually mass accident cases].... In the other class are "mega tort" cases—the Agent Orange, Dalkon Shield, and asbestos litigations, involving hundreds of thousands of claimants." Glen O. Robinson & Kenneth S. Abraham, *Collective Justice in Tort Law,* 78 Va.L.Rev. 1481, 1488, n. 20 (1992) (hereinafter *Collective Justice in Tort Law* ) (advocating tort cases be litigated en mass through use of new techniques including statistical profiles).

B.U.L.Rev. 695, 696 & n. 4 (1989), *commenting on* Francis E. McGovern, *Resolving Mature Mass Tort Litig.*, 69 B.U.L.Rev. 659 (1989) (advocating tort cases be tried in the aggregate in terms even stronger than McGovern's).

Any kind of aggregation will have some effect on the "deep-rooted historic tradition that everyone should have his own day in court," *Martin v. Wilks*, 490 U.S. 755, 762, 109 S.Ct. 2180, 2184, 104 L.Ed.2d 835 (1989). This idea is the core of the opposition to consolidation. "From this perspective, any compromise of individualized adjudication is, *pro tanto*, a compromise of justice. This simple syllogism is appealing, however, only at an unreflective level of understanding." *Collective Justice in Tort Law, supra* note 2, at 1511. Alternative goals of corrective justice—such as equality of outcome—are disserved by this idea, goals which have been the subject of much of the recent discussions of tort reform. *See, e.g.,* Kenneth S. Abraham, *What is a Tort Claim? An Interpretation of Contemporary Tort Reform*, 51 Md.L.Rev. 172 (1992) (analyzing recent tort reforms); Michael J. Saks & Peter D. Blanck, *Justice Improved: The Unrecognized Benefits of Sampling and Aggregation in the Trial of Mass Torts*, 44 Stan. L.Rev. 815, 833–36 (1992) (arguing that any jury decision is analogous to an unrepresentative sample of potential jury verdicts, and that therefore aggregation procedures based on statistical sampling are more accurate).

■ Equality in outcome in tort—here, that repeated factual issues would lead to standardized rules of law which would govern behavior—has been an idea in tort law at least since Holmes proposed it in *Baltimore & Ohio RR. v. Goodman*, 275 U.S. 66, 48 S.Ct. 24, 72 L.Ed. 167 (1927). It has stayed at the level of only an idea, however. *See Pokora v. Wabash Ry.*, 292 U.S. 98, 102–06, 54 S.Ct. 580, 581–83, 78 L.Ed. 1149 (1934). For this reason, consolidations under Rule 42(a) are not a joinder of claims: despite the common elements, each claim remains separate. For the same reasons, class actions under Rule 23 may require the common questions to "predominate," and class actions in the asbestos context have proven far more troubling an issue than consolidations.

Despite the troubling questions posed by aggregation of claims, however, in the mass tort context aggregation seems to be the only answer. The asbestos cases in particular have been criticized for not serving the principles of corrective justice. *See, e.g.,* Robert L. Rabin, *Tort System on Trial: The Burden of Mass Toxics Litigation*, 98 Yale L.J. 813 (reviewing Peter H. Schuck, *Agent Orange on Trial* (1987)). In response, some change is starting to take place in the courts' handling of the asbestos crisis. The innovative use of class actions and other radical techniques for trying and settling the mass tort cases has been upheld by this and other circuits. *See, e.g., In re Agent Orange Product Liability Litigation*, 100 F.R.D. 718 (E.D.N.Y.1983), *aff'd*, 818 F.2d 145 (2d Cir. 1987), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988); *Jenkins v. Raymark Indus.*, 782 F.2d 468 (5th Cir.1986). This does not mean, of course, that class actions and other innovations in the mass tort context have received universal approval, *see In re Fibreboard Corp.*, 893 F.2d 706 (5th Cir.1990) and *In re Allied–Signal, Inc.*, 915 F.2d 190 (6th Cir.1990). But the problem consists in formulating a class action which adequately represents the rights of all parties, not in any lack of judicial authority to aggregate cases. The Second Circuit, in response to a party's contention that the Honorable Jack B. Weinstein's reorganization of Johns–Manville was an impermissible exercise of legislative authority, stated:

We reject the contention that Judge Weinstein assumed a legislative role in proposing steps to restructure the Trust and working rather forcefully with the parties to accomplish the restructuring. A judge with responsibilities for a lawsuit is not a bystander. Nor is the judge relegated to the role of umpire, awaiting the submission of precisely framed disputes by the parties. Especially in the course of a complex and continuing proceeding ... a judge has an entirely legiti-

mate judicial role in suggesting constructive solutions and assisting the parties in achieving them.

*In re Johns–Manville II*, 982 F.2d at 733. The Johns–Manville case was remanded because the classes as structured in the class action did not adequately represent the interests of certain subclasses and because of statutory limitations imposed by the Bankruptcy Code. *In re Johns–Manville II* does not disapprove of the aggregation of cases under judicial authority.

Other asbestos cases brought in the Southern and Eastern districts of New York were initially set for trial in clusters of consolidated cases, several of which went to trial in that form. *See, e.g., In re Joint Eastern & Southern Dist. Asbestos Litig.*, 762 F.Supp. 519 (E. & S.D.N.Y.1991) (Patterson, J.) (twenty plaintiffs consolidated against multiple defendants for trial). It soon became clear that there were far too many cases for this piecemeal adjudication to continue. On January 22, 1990, several hundred personal injury and wrongful death asbestos cases with a substantial nexus to the Brooklyn Navy Yard were reassigned to Judge Weinstein for all purposes. *In re Joint Eastern and Southern Dist. Asbestos Litigation*, 772 F.Supp. 1380, 1385 (E. & S.D.N.Y.1991) (Weinstein, J.) (*Brooklyn Navy Yard I*), *aff'd in part and reversed in part In re Brooklyn Navy Yard Asbestos Litigation*, 971 F.2d 831 (2d Cir.1992) (*Brooklyn Navy Yard II*). On February 27, 1991, the Honorable Charles Sifton ordered the consolidation of all cases pending in the Southern and Eastern Districts which arose out of the construction, operation or maintenance of electrical facilities in New York (the "Powerhouse Cases"). *See In re Joint Eastern & Southern Dist. Asbestos Litig.*, 769 F.Supp. 85 (E. & S.D.N.Y.1991) (Weinstein, J.) (defending consolidation of Powerhouse Cases from both the Eastern and Southern districts). These were consolidated for reverse bifurcated trial (the first trial for damages, the second for liability) in groups of 50. In August 1991, the first jury trial returned a verdict of over 42 million for the first damages trial of 45 cases. Settlement negotiations proceeded with greater speed from that point, and ultimately only two Powerhouse cases were tried to verdict. *In re New York City Asbestos Litig.*, 1992 U.S. Dist. LEXIS 3721 (as corrected August 18, 1992) 142 F.R.D. 60 (report by Special Master Kenneth R. Feinberg on the resolution of asbestos cases in the Southern and Eastern Districts of New York). The remaining Southern and Eastern District asbestos cases were being consolidated by this Court when the MDL Panel (after refusing five times to consolidate asbestos cases pending nationwide) abruptly reversed itself in July of 1991 and issued an order consolidating 26,639 actions before the Honorable Charles Weiner in Philadelphia. *In re Asbestos Products Liability Litigation (No. VI)*, 771 F.Supp. 415 (J.P.M.L.1991).

The MDL Panel cited as impetus for its decision a letter dated November 21, 1990, signed by eight federal district judges who requested that the Panel act. *Id.* at 417. The Panel frankly admitted it was the sheer mass of pending asbestos litigation that prompted its response: "we are persuaded that this litigation has reached a magnitude, not contemplated in the record before us in 1977, that threatens the administration of justice and that requires a new, streamlined approach." *Id.* at 418. The Panel refused to single out exceptions to the transfer, noting instead that:

> It may well be that on further refinement of the issues and close scrutiny by the transferee court, some claims or actions can be remanded in advance of the other actions in the transferee district. Should the transferee court deem remand of any claims or actions appropriate, the transferee court can communicate this to the Panel, and the Panel will accomplish remand with a minimum of delay.

*Id.* at 422. This order has been described as representing "the strongest action to date by the judiciary to respond to the asbestos crisis." Note, *In re Joint Eastern & Southern Dist. Asbestos Litigation: Bankrupt and Backlogged—a Proposal For the Use of Federal Common Law in*

*Mass Tort Class Actions,* 58 *Brooklyn L.Rev.* 553, 564 (1992).

The cases before this Court now are the result of such a remand. They have been remanded as "hardship" cases, consistent with the concerns of both commentators and courts that plaintiffs with malignancies and serious health problems dues to asbestos exposure should be tried sooner than unimpaired claimants. *See* Schuck, *The Worst Should Go First: Deferral Registries in Asbestos Litigation, supra* at 8 (arguing that courts should class asbestos cases into registries as in Illinois and Massachusetts (at n. 4) and try the most seriously impaired claimants first); *In re Johns–Manville I,* 129 B.R. at 748 (discussing deferral registries actually enacted).

In short, these cases have been selected precisely because they can be consolidated and because they should be tried sooner rather than later. With the exception of Molloy's gastric cancer, all the diseases suffered by the plaintiffs have been unquestionably linked to exposure to asbestos.[3] Asbestos trials are prolonged affairs, often lasting two to three weeks, and to separate these out will defeat the purpose of justice in this context. As one court has phrased it,

> Consolidation will result in substantial time-savings. In each group of claims being today consolidated for trial, there exists a body of evidence common to each claimant's case. Common evidence is expected to include background evidence as to worksite, occupation, type of asbestos products used at the site, product identification information, general scientific evidence concerning exposure time, general medical evidence regarding asbestos related diseases and causation, and type of illness. When six to eight claims are consolidated for trial, that information can be presented once rather than six to eight times in individual trials. .... Thus, in these cases, considerations of judicial economy are not in conflict with considerations of inconvenience or delay.

*In re all Asbestos Cases Pending in the United States District Court for the District of Maryland,* slip. op., at 3 (D.Md. Dec. 16, 1983) (hereinafter *Maryland Asbestos Cases* ).

This court has consolidated asbestos tort actions for trial before. Five such actions were successfully consolidated for trial in *Drago,* 125 F.R.D. 60 (E.D. & S.D.N.Y. 1989) (Sweet, D.J.). In *Drago,* substantial overlap in the time periods, the nature and extent of the plaintiffs' diseases, the similarity of their claims, and the manner in which all five plaintiffs alleged exposure to asbestos-containing products justified consolidation, *id.* at 65–66, although the overlap of work sites was "not substantial" and the consolidation of wrongful death and personal injury actions might lead to prejudice, *id.* at 65. Even where there were differences, similar patterns emerged that reduced the potential for confusion on the part of the jury; the court found that the varied worksites, for example, could be reduced to three categories (construction sites, powerhouses, and hospitals). The evidence of a mass tort like asbestos exposure lent itself to a consolidation of trial. "Most importantly, all of the claims will involve proof of product defectiveness, particularly state of the art evidence.... [T]he presentation of state of the art evidence ... has become standardized in that it differs little from trial to trial and is not specifically tailored to a particular plaintiff's case," *id.* at 66 (citations omitted).

Nine more asbestos actions against multiple defendants were consolidated by this Court shortly after the decision in *Drago. See In re Joint Eastern & Southern Dist. Asbestos Litigation,* slip. op. at 6–7, 1990 WL 4772) (E.D. & S.D.N.Y. Jan. 16, 1990) (Sweet, D.J.) (hereinafter *Schultz* ). *Schultz* consolidated the trial of four deceased plaintiffs (of lung cancer and mesothelioma) with five living plaintiffs (all claiming asbestosis) against some twenty-

---

**3.** Between fifty and eighty percent of diagnosed cases of pleural and peritoneal mesothelioma have a history of asbestos exposure. *In re Johns–Manville* I, 129 B.R. at 740 (citing Llewel-lyn, *The Current Approach to the Diagnosis and Treatment of Mesothelioma,* 11 Int. Med. 50 (Dec. 1990)).

two defendants. Noting that consolidation "produces significant time-savings and conserves litigation costs simply because common evidence such as general scientific evidence concerning exposure time or general medical evidence regarding asbestos-related diseases" can be presented once instead of several times, the court held that all plaintiffs were exposed to asbestos-containing products in a similar manner. All were tradespeople working with or around products containing asbestos in similar types of sites. All alleged similar types of diseases—lung cancer, mesothelioma, and asbestosis—as a result of their exposure to the defendants' products. All alleged similar legal theories of product liability, especially state of the art evidence, to support their claims. The court held that these common issues of fact and law would permit considerable savings of time and money through consolidation.

### 3. Consolidation of Asbestos Cases Under Rule 42(a)

Many other courts have consolidated asbestos claims for trial or approved of such consolidations. In *Johnson v. Celotex Corp.*, 899 F.2d 1281 (2d Cir.1990), the Second Circuit considered the consolidation of two separate asbestos claims. The defendants in *Johnson* contested the consolidation, claiming that different time periods of exposure (from 1942 to 1945 and from 1946 to 1966), difference in diseases (while both plaintiffs had asbestosis, one had died of a separate lung disease) and the fact that one plaintiff was deceased while the other was living, meant that the cases should not have been consolidated. The Court found that the trial court, which relied upon the factors enumerated in *Maryland Asbestos Cases* for determining the appropriateness of consolidation and which had taken precautions against jury confusion, had not abused its discretion in ordering consolidation.

In the *Maryland Asbestos Cases*, a panel of Maryland district court judges set forth guidelines for consolidating asbestos claims for trial. It proposed consolidation for claims selected according to the following criteria:

(1) common worksite; (2) similar occupation; (3) similar time of exposure; (4) type of disease; (5) whether the plaintiffs were living or deceased; (6) status of discovery in each case; (7) whether all the plaintiffs were represented by the same counsel; and (8) type of cancer alleged (*e.g.*, lung, stomach, mesothelioma).

*Schultz,* slip. op. at 3.

The defendants objected to consolidation, arguing that it would "create, by accumulation of evidence, the impression that all ten or fifteen defendants are responsible for the injury to each plaintiff," *id* at 7, and that "the jury will be confused by the different work histories, varying exposure periods, and the different medical evidence which must be presented by each plaintiff and countered by each defendant." *Id.* at 8. The panel acknowledged these concerns, but found that juries often consider complex cases competently and that the trial judge could take precautionary measure to reduce confusion and prejudice.

The court in *Neal v. Carey Canadian Mines, Ltd.,* 548 F.Supp. 357 (E.D.Pa.1982), *aff'd,* 760 F.2d 481 (3d Cir.1985), consolidated for trial the claims of fifteen plaintiffs who sued Celotex, alleging that they had contracted asbestos-related diseases while working at one of Philip Carey's manufacturing plants. The court found that common issues of law and fact predominated over individual issues, *id.* at 383. Significantly, the consolidated trial involved both personal injury and wrongful death claims—three of the fifteen claimants allegedly had died from asbestos-related diseases.

Such precautionary methods can work even with a far larger number of plaintiffs than the fifteen in *Carey* or the thirteen here. In the *Brooklyn Navy Yard* cases, the asbestos tort cases of some six hundred workers who alleged exposure at the United States Navy Yard in Brooklyn were successfully consolidated for trial under the supervision of Judge Weinstein. The *Brooklyn Navy Yard* cases heading for trial were divided into three categories: Phase I for cases in which over 90% of

plaintiffs' asbestos exposure occurred at BNY; Phase II for cases in which 50% to 90% of exposure occurred there; and Phase III for the remainder. Most of the cases were settled, but seventy-nine Phase I cases were brought to trial jointly in federal court before Judge Weinstein. The jury returned plaintiffs' verdicts in fifty-two cases and defense verdicts in twelve cases; the rest of the cases settled. Later, the remaining fifteen Phase II and Phase III cases also went to consolidated trial before the same judge and jury. As the Second Circuit noted, "the trials were handled with utmost case to ensure that the jurors could assimilate the vast amounts of information necessary to assess the claims," *Brooklyn Navy Yard II*, 971 F.2d at 836. The trial court took extensive precautions to prevent juror confusion:

> Each had a notebook with key documents, a photograph of each injured person and a summary of each case. Each juror took extensive notes using steno pads and pencils supplied by the parties. A photograph of each of the more than one hundred and twenty witnesses was made available to the jury to refresh its memory. Summaries of depositions and detailed evidence and witness lists as well as full records of all medical history were sent to the jury room. Interim summations by counsel and short interim charges and explanations during the trial were given by the court.... Strict control over experts and extensive video and other depositions was relied on to reduce costs per case and to speed the trials. Much of the documentary evidence was studies by the jury in the jury room, avoiding hundreds of hours of courtroom time. Extensive use of slides, charts and other visual devices assisted the jurors.

*Brooklyn Navy Yard I*, 772 F.Supp. at 1386. Although the defendants appealed many aspects of Judge Weinstein's decision in *Brooklyn Navy Yard I*, even the appellate court noted that the defendants did not contest the propriety or the conduct of the joint trial. *Brooklyn Navy Yard II*, 971 F.2d at 836, n. 1.

This does not mean that consolidation of asbestos should occur automatically. In *Cain v. Armstrong World Indus.*, 785 F.Supp. 1448 (S.D.Ala.1992), the court granted the defendants' motion for a new trial of the thirteen plaintiffs' asbestos claims after it found that the jury's confusion and prejudice was "manifest in the identical damages awarded in the non-cancer personal injury cases and in the cancer personal injury cases, the relatively short deliberation time [fifteen hours] as well as in the inflated amounts of many of the damage awards and the lack of evidence supporting some of the damages in several cases," *id.* at 1455. But the Court went on to say:

> It is not this Court's opinion that asbestos actions can never be consolidated trial. Rather, consolidation simply did not work in this instance. The number of cases consolidated, the amount of evidence to be considered, the differing injuries involved and the unique aspects of Alabama's wrongful death statute all contribute to make consolidation of these cases unworkable.

*Cain*, 785 F.Supp. at 1456.

■ Several factors emerge from these cases for courts to consider in determining whether consolidation for trial under Rule 42(a) is appropriate. These factors include:

a) manner of exposure

b) time of exposure

c) nature and extent of disease

d) similarity of claims

e) commonality of counsel

f) number of claims consolidated

g) availability of precautionary measures

### 4. Consolidation in This Case

■ Applying these factors to the facts in this case justifies the conclusion that consolidation for trial of all of the cases save *Molloy* (gastric cancer) is warranted. As in *Schultz*, certain factors are common to some plaintiffs but not others, and overlap of these characteristics between groups of plaintiffs lends to consolidation, not severance. The type of work, the products to which the plaintiffs allege exposure, and

the type of disease are distributed equally among the plaintiffs.

### a. Manner of Exposure

All plaintiffs were exposed to asbestos in a similar manner—as tradespeople working with or around products containing asbestos, as *Schultz* and *Drago*. Five of the plaintiffs allege exposure to asbestos-containing products while working in shipyards: Clarkson, Luchnick, Molloy, Plastrik, and Pulizzi. Three allege exposure at construction sites (Consorti, Mullin and Smolowitz). Three allege exposure to products used in other lines of work: Clarkson alleges exposure to asbestos through mats and gloves used while making repairs in a railyard, Strafford alleges exposure while refurbishing valves in a workshop, and Tabolt alleges exposure in the course of loading and unloading products at a farmers' cooperative.

Of course, much of the jobsite/product identification must be individualized, in view of the substantial differences in the plaintiffs' worksites. But this will not eliminate the savings of time and effort which will be gained by consolidation, nor does it establish that a properly instructed jury would be unable to evaluate the working conditions and degree of exposure ·at the jobsites of the different plaintiffs less fairly than it would were it required only to judge the multiple worksites of a single plaintiff at a single trial. Consolidation may even lead to a fairer result if it enables a jury to compare one worksite to another.

Consolidation will eliminate duplicative testimony by plaintiffs' experts about the shared types of worksites, but it will mostly help duplication of general scientific evidence concerning exposure to asbestos-containing products in occupational settings. Testimony concerning the airborne qualities of asbestos fibers at work sites should not change significantly from trial to trial,

especially since most of the plaintiffs, whatever their occupation, identify the same types of products. All the plaintiffs save Strafford and Tabolt allege exposure to asbestos-containing pipe insulation, and all plaintiffs save Strafford allege exposure to asbestos-containing cement. Strafford alleges exposure to asbestos-containing gaskets and packing materials; one other plaintiff (Luchnick) alleges exposure to gaskets, and other plaintiffs allege exposure to packing materials.

One factor which does not lend itself quite as neatly to consolidation, however, is the different times at which the plaintiffs allege they were exposed. Four claim exposure in the 1940's (Luchnick, Molloy, Plastrik, and Pulizzi), and the rest claim exposure only since the 1950's (Clarkson, from 1951 to 1973; Consorti, from 1960 to 1991; Mullin, from 1959 to 1986; Smolowitz, from 1954 to 1980; Tabolt, from 1965 to 1972; and Strafford, in 1962). Nonetheless, there is still considerable overlap. State of the art testimony will indubitably be offered by the plaintiffs for the entire time period covered by this action. In view of the precautionary steps to be employed, a jury should be able to engage in appropriate fact-finding.

### b. Nature and Extent of Diseases

■ One of these cases, that of deceased plaintiff Harold Molloy, is not appropriate for consolidation. Molloy alleged that his exposure to asbestos-containing cement, block, and pipecovering during his work from 1943 to 1945 at Bethlehem Steel on Staten Island and at the Todd Shipyard in Brooklyn resulted in gastric (stomach) carcinoma.

Asbestos has been linked to lung cancer, with evidence that indicates its risks are greatly compounded by smoking.[4] It has been securely linked to mesothelioma, a rare form of cancer in the lungs.[5] Wheth-

---

4. Peter Schuck, *supra* at 8, 15, 25., p. 3 & n. 25, citing, *inter alia*, Janet M. Hughes & Hans Weill, *Asbestos as a Precursor of Asbestos–Related Lung Cancer: Results of a Prospective Mortality Study*, 48 Brit.J.Indus.Med. 229, 229–33 (1991).

5. *Id.* & nn. 23–24, citing, *inter alia*, Andrew Churg & Francis H.Y. Green, Pathology of Occupational Lung Disease 288 (1988); *see* 29 C.F.R. § 1910.1001 app. H. (III) (1991) (OSHA Guidelines).

er asbestos exposure is associated with other types of cancer remains a matter of considerable debate in the medical and legal communities.[6] Medical evidence of the known causes of gastric cancer is likely to be irrelevant (and possibly prejudicial) to the other cases sought to be consolidated here. Evidences of proof for cancer at sites other than those in the lung or related to the lungs will differ from evidences of proof for the diseases in the other cases. The severance of *Molloy* from the other twelve cases is justified.

However, the evidence and the patterns of proof in those twelve will be so sufficiently similar that consolidation of those cases *is* justified. Seven of the Plaintiffs claim mesothelioma, one claims asbestosis, and one claims lung cancer. General medical evidence of the etiology and course of the disease at issue is common to each of these cases, and presenting such evidence once instead of twelve times will reduce redundancy without confusing the jury. Only two of the plaintiffs have claimed not to have smoked cigarettes or pipes on a regular basis, and their parallel smoking histories will permit the jury to compare testimony about the health results of such behavior. These similarities indicate that consolidation will reduce substantially the amount of medical evidence admitted at trial.

### c. Similarity of Claims

These personal injury and wrongful death claims present substantially similar legal issues. However, the presence of wrongful death claims and personal injury actions in a consolidated trial is somewhat troublesome because of the potential for prejudice, which lies in the possibility that the living claimants' asbestos-related diseases in fact may not prove fatal.

Other courts which have confronted this problem have nonetheless consolidated personal injury and wrongful death claims for trial. In *Johnson*, 899 F.2d at 1285, where the trial court consolidated the cases of a living with a deceased plaintiff, the court noted that precautions could successfully mitigate the problems of presenting the two cases together:

> Instructions were given throughout the trial and in the charge to caution the jury to consider each plaintiff's claims individually. Two separate verdict forms were provided to the jury, one for *Johnson*, the other for *Higgins*.... In the instant case, the trial court was well within its discretion to consolidate the two cases and the court acted throughout in a manner which ensured that each plaintiff's claim was considered separately.

The court in *Neal* consolidated fifteen claims, three of which were for wrongful death, *see Neal*, 548 F.Supp. at 365–66, 383. This court consolidated four deceased plaintiffs with five living ones in *Schultz*, slip. op. at 11, and three deceased plaintiffs with two living ones in *Drago*, 125 F.R.D. at 62.

■ As in *Drago* and *Schultz*, defendants here express a valid concern that the "dead plaintiffs may present the jury with a powerful demonstration of the fate that awaits those claimants who are still living," when it is possible that the "living claimants' asbestos-related diseases in fact may not prove fatal," *Drago*, 125 F.R.D. at 66. However, the experiences and the precedents of these cases, as well as the availability of cautionary instructions, establish that consolidation is appropriate, notwithstanding the coexistence of personal injury and wrongful death claims.

The presence of other similar legal issues also warrants consolidation. All of the claims will involve proof of product defectiveness, particularly state of the art evidence as to what the defendants knew about the dangers of asbestos and when they knew it. Consolidation will permit joint consideration of these common issues of fact and law.

---

**6.** *Id.* & n. 26. citing, *inter alia,* Richard Doll & Julian Peto, *Other Asbestos–Related Neoplasm,* in *Asbestos–Related malignancy* 94 (Karen Antman & Joseph Aisner eds., 1987) ("Neither the epidemiological data so far published nor the biological evidence is sufficiently compelling to convince us that misdiagnosis or chance is not the simplest, and most plausible explanation of the facts observed for cancer of any other site than the lung, pleura, or peritoneum.")

#### d. Commonality of Counsel

Several courts have noted that the fact that plaintiffs share one counsel favors consolidation. *See, e.g., Wilson v. Johns–Manville Sales Corp.,* 107 F.R.D. 250, 253 n. 1 (S.D.Tex.1985). Here the same firm represents all thirteen claimants.

It is true that the large number of defendants and their counsel mitigates against consolidation. However, a certain core group of some twenty-three defendants will be implicated in each action. The defendants argue that the presence of so many defense counsel in the courtroom is likely to lead the jury to believe that a larger group of defendants will share in the payment of damages in each individual case than actually will. Clearly, although the defendants have shown that the court must take steps to avoid creating this impression in the mind of the jury, the defendants have not shown that this is impossible. In *Schultz,* this court held that a jury could apportion liability adequately among at least twenty-two defendants. In *Cain,* the court found that confusion on the part of the jury between the plaintiffs necessitated a mistrial. Distinguishing among the plaintiffs was the issue; the absolute number of defendants was not. *Cain,* 785 F.Supp. at 1450.

#### 5. Availability of Precautionary Measures

"Consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or the change the rights of the parties, or make those who are parties in one suit parties in another." *E. & S. Districts Asbestos Litigation,* 124 F.R.D. 538 (E.D. & S.D.N.Y.1989) (Sifton, J.), *aff'd sub. nom. Johnson v. Celotex,* 899 F.2d 1281 (2d Cir.1990), *quoting Johnson v. Manhattan Railway Co.,* 289 U.S. 479, 496–97, 53 S.Ct. 721, 727–28, 77 L.Ed. 1331 (1933).

Although all twelve claims present common issues of law and fact favoring consolidation, some factors—notably, the limited overlap between the work sites at which the plaintiffs were exposed, the different asbestos-containing products to which they were exposed, the presence of wrongful death and personal injury claims in the same trial, and the varying medical prognoses—will require effort to prevent confusion and prejudice.

It is too early in the proceedings to identity the particular measures that will work best here, but several courts have set forth some available options. In *Hendrix,* 776 F.2d at 1496–97, the court noted that the trial judge took precautions similar to those taken by Judge Weinstein in Brooklyn Navy Yard I. These included separate notebooks for the jurors, tabbed for each plaintiff and each defendant, careful attention to the presentation of evidence, and cautionary instructions reminding the jurors that, during their deliberations, they would have to consider each of the plaintiff's claims separately. Similarly, in *Neal,* 548 F.Supp. at 383, the court observed:

> Supplier defendants have not shown any demonstrable prejudice resulting form the consolidation of all fifteen claims. Special interrogatories were submitted by the Court with respect to each individual plaintiff to be answered with respect to each individual defendant and were so answered by the jury. Moreover, individual summary sheets were provided to the jury for each individual plaintiff which listed the plaintiff's name, dates of employment, and diagnosis by plaintiff's medical expert.... Photographs of the individual plaintiffs were available upon the request of the jury and plaintiffs were present throughout most of the trial.

#### 6. Consolidation of the Remaining Claims

The cases of the remaining three Plaintiffs—Guerriero, Klein, and Morgan—remain consolidated on their motion, based upon the hardship determination of Judge Weiner despite the lack of information before this Court about these plaintiffs' illnesses, occupations, or legal theories. Leave is granted to the defendants to move to sever these cases if grounds other than those considered here are presented.

*Conclusion*

For the reasons set forth above, the following twelve cases are consolidated for trial: *Clarkson*, 92 Civ. 1113; *Consorti*, 92 Civ. 6377; *Guerriero*, 92 Civ. 7284; *Klein*, 92 Civ. 7332; *Luchnick*, 92 Civ. 7283; *Morgan*, 92 Civ. 7333; *Plastrik*, 91 Civ. 2992; *Pulizzi*, 92 Civ. 2402; *Strafford*, 92 Civ. 3900; *Tabolt*, 92 Civ. 0763; *Mullin*, 88 Civ. 8133; and *Smolowitz*, 88 Civ. 6403. Plaintiffs' motion to consolidate is granted as to these cases.

One case is not consolidated: *Molloy*, 92 Civ. 7414. Plaintiffs' motion to consolidate is denied as to this case.

A pretrial conference will be held on March 10 at 4 p.m., and subject to that conference trial will commence on April 14.

It is so ordered.