### In re ASBESTOS LITIGATION.

**This Document Relates to: Greff, Moore, McPadden, Strafford, Ciletti, Conway.**

Nos. 87 Civ. 8085 (RWS), 88 Civ. 4212 (RWS), 90 Civ. 3473 (RWS), 92 Civ. 3900 (RWS), 92 Civ. 3901 (RWS), 93 Civ. 7177 (RWS).

United States District Court,
S.D. New York.

March 28, 1997.

---

Levy, Phillips & Konigsberg, New York City (Moshe Maimon, of counsel), for Plaintiffs.

Tucker Biegel & Goldstein, Boston, MA (Bruce Tucker, of counsel), for Defendant Owens–Corning Fiberglas.

Gregg J. Borri, New York City, for Defendant Raymark Industries.

## OPINION

SWEET, District Judge.

Plaintiffs in six separate asbestos tort actions before this Court have moved to consolidate claims for trial pursuant to Rule 42(a), Fed.R.Civ.P.

For the reasons set forth below, the motion will be granted.

### Prior Proceedings

These actions are six of the so-called "asbestos cases" that have been supervised by the Multi–District Litigation Panel for discovery and pretrial purposes. Each of these actions was originally filed in the Southern District of New York and subsequently transferred by order of the Multi–District Litigation Panel to the Honorable Charles Weiner of the Eastern District of Pennsylvania. They have been transferred back to this Court for trial purposes on the basis of hardship arising out of trial delay.

The instant motion to consolidate was filed on January 15, 1997. Argument was heard on January 17, 1997, at which time the motion was considered fully submitted.

After the filing of the instant motions, the parties agreed to a separate trial in *Conway,* 93 Civ. 7177. Accordingly, this opinion addresses the appropriateness of consolidation of the remaining five plaintiffs' actions.

### Facts

These cases consist of five actions: *Greff,* 87 Civ. 8085; *Moore,* 88 Civ. 4214; *McPadden,* 90 Civ. 3473; *Strafford,* 92 Civ. 3900; and *Ciletti,* 92 Civ. 3901.

Walter Strafford ("Strafford"), a smoker, claims exposure to asbestos in 1962 from packing materials and gaskets while working in a sheet metal shop dismantling and refurbishing valves allegedly containing asbestos packing. Strafford's claim arises out of his contracting mesothelioma, a cancer caused by exposure to asbestos, and lung cancer.

Richard Moore's ("Moore") claim arises out of his contracting lung cancer allegedly as a result of exposure to asbestos during his work as a mason tenderer and laborer at numerous construction sites in New York City between 1959 and 1986.

The remaining three plaintiffs bring claims arising from their contracting mesothelioma. Alfred Ciletti ("Ciletti") worked as a sheetmetal worker at various shipyards between 1940 and 1973. Joseph Greff ("Greff") worked as a welder at a shipyard between 1941 and 1984. Martin McPadden ("McPadden") worked as a mechanic and steamfitter between 1957 and 1973 on several naval ships and in several power-generating stations.

## Discussion

### I. Consolidation, Toxic Torts, and Asbestos

Mass toxic tort cases, including asbestos cases, may be consolidated by a court if they meet the requirements of rule 42(a), Fed.R.Civ.P.:

> When actions involving a common question of law or facts are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

The consolidations of mass toxic tort cases has created its own body of law, but such consolidations are still governed by the concerns of Rule 42(a):

> Consolidation of tort actions sharing common questions of law and fact is commonplace. This is true of asbestos-related personal injury cases as well.

> The trial court has broad discretion to determine whether consolidation is appropriate. In the exercise of discretion, courts have taken the view that considerations of judicial economy favor consolidation. However, the discretion to consolidate is not unfettered. Considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial.

*Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284–85 (2d Cir.1990) (citations omitted).

In *Malcolm v. National Gypsum Co.*, 995 F.2d 346 (2d Cir.1993), the Court of Appeals reversed an order of consolidation, holding that "it is possible to go too far in the interest of expediency and to sacrifice basic fairness in the process." *Id.* at 354. Prior to *Malcolm*, the Court of Appeals had observed:

> [W]e are mindful of the dangers of a streamlined trial process in which testimony must be curtailed and jurors must assimilate vast amounts of information. The systemic urge to aggregate litigation must not be allowed to trump our dedication to individual justice, and we must take care that each individual plaintiff's—and defendant's—cause not be lost in the shadow of a towering mass litigation.

*In re Joint Eastern & Southern Dist. Asbestos Litig.*, 971 F.2d 831, 853 (2d Cir.1992).

The facts in *Malcolm* are significantly different from the underlying facts in the case at bar. In that trial, the Honorable Charles P. Sifton consolidated over 600 cases in which each plaintiff has been exposed to asbestos in one or more of over 40 power-generating stations, or "powerhouses," in New York State. *See In re Joint Eastern & Southern Districts Asbestos Lit.*, 798 F.Supp. 925 & 798 F.Supp. 940 (E. & S.D.N.Y.1992). The trial procedure in *Malcolm* resulted as follows:

> Forty-eight were selected from the 600 cases for trial on a reverse-bifurcated basis, i.e. damages to be tried first and then liability.... Each of the 48 plaintiffs had named as defendants between 14 and 42 manufacturers or distributors of asbestos-containing products. Of these, 25 appeared at trial as direct defendants ... During the four-month damages trial, evidence of the debilitating diseases and/or deaths of all 48 plaintiffs was presented to the jury ... [D]etailed testimony for each victim was necessary....

*Malcolm*, at 348. In addition, there were a number of impleaded third-party defendants:

> Several of the defendants impleaded third-party defendants. For example, on March 18, 1991, 13 days before the trial began, Judge Sifton allowed defendant Owens–Corning Fiberglas Corporation to implead over 200 companies. Some of the third-party defendants, in turn, impleaded fourth-party defendants.

*Id.*

Here, there are but five plaintiffs and six defendants, only two of which (Raymark and Owens Corning) have filed papers to date in opposition to a consolidated trial.

In *Malcolm*, the Court of Appeals found that the welter of information so overwhelmed the jury that, once the jury found the defendant liable, its particular defenses were lost in the sheer mass of information: "We conclude that under the unique circumstances of this case, there is an unacceptably

strong chance that the equal apportionment of liability amounted to the jury throwing up its hand in the face of a torrent of evidence." *Id.*

Although the Court of Appeals remanded the cases based upon improper consolidation, the Court was explicit that its opinion did not change the governing standards for consolidation; its opinion merely states that in *Malcolm,* consolidation was not warranted:

> We do not wish to be understood as condemning all consolidations of asbestos cases. Our holding today is narrow and amounts to little more than a caution that it is possible to go too far in the interests of expediency and to sacrifice basic fairness in the process.

*Id.,* at 354.

The Court of Appeals approved the eight-factor test devised by a Maryland district court and previously approved by the Second Circuit in *Johnson. In re All Asbestos Case, Pending in the United States District Court of the District of Maryland,* (D.Md. Dec. 16, 1983) (*en banc*) (hereinafter *In re Maryland Asbestos Cases*) was one of the first decisions which tackled the difficulties inherent in mass asbestos litigation. The eight factors which the Maryland Court enumerated as necessary to a determination of the propriety of consolidating asbestos cases are: "(1) common worksite; (2) similar occupation; (3) similar time of exposure; (4) type of disease; (5) whether plaintiffs were living or deceased; (6) status of discovery in each case; (7) whether all plaintiffs were represented by the same counsel; and (8) type of cancer alleged ..." *In re Maryland Asbestos Cases* at 3. The Court of Appeals in *Malcolm* applied the same eight-factor test.

In addition, the opinion of the Court of Appeals noted that according to this test earlier consolidations were proper. The Court in *Malcolm* praised the results in the consolidation by the Honorable Jack Weinstein of 64 cases alleging exposure in the Brooklyn Navy Yard: "We did applaud Judge Weinstein 'for his innovative managerial skills,' and indeed, the consolidation in *Brooklyn Navy Yard* is a chiaroscuro study in contrast with the instant case." *Malcolm,* 995 F.2d at 353. *See also In re Eastern &*

*Southern Dist. Asbestos Litig.,* 772 F.Supp. 1380 (E. & S.D.N.Y.1991), *aff'd in part and reversed in part,* 971 F.2d 831, 853 (2d Cir. 1992).

## II. *Application of the Relevant Factors*

■ Applying the eight-factor test set forth above, as well as this Court's prior decisions regarding consolidation of asbestos cases to the facts in these cases, reveals that consolidation for trial of the instant cases is warranted.

### A. *Common Worksite*

The primary exposure for three of the five plaintiffs—Greff, Ciletti, and McPadden—occurred at various shipyards. A review of the particular sites where these four plaintiffs worked reveals some differences. Each of these four plaintiffs worked at a different site or sites: Greff worked at Bethlehem Steel in Pennsylvania, Gallagher Brothers Repair Yard in Jersey City, New Jersey, and two dry dock and repair outfits in Staten Island. Ciletti worked on various ships docked at the Brooklyn Navy Yard, and was employed by Universal Sheet Metal at various locations in New York City. McPadden worked for the United States Navy, Astoria Powerhouse, Ravenswood Powerhouse, the GM Building in Manhattan, the Exxon Building in Manhattan and the A & S Mall in Queens.

Moore worked at various construction sites in New York City; his Social Security printout reveals 56 employer entries for the relevant time period. Strafford worked at Eastern Supply, a sheet metal shop in Brooklyn. He claims he was exposed to asbestos while dismantling and refurbishing valves allegedly containing asbestos packing.

Much of the jobsite evidence would necessarily be individualized, in view of the differences among the plaintiffs' worksites. However, this will not eliminate the savings of time and effort which will be gained by consolidation, nor does it establish that a properly instructed jury would be unable to evaluate the working conditions and degree of exposure at the jobsites of different plaintiffs less fairly than it would were it required only to judge the multiple worksites of a single

plaintiff at a single trial. Consolidation may even lead to a fairer result if it enables a jury to compare one worksite to another. *See In re New York Asbestos Litig.*, 145 F.R.D. 644, 653 (S.D.N.Y.1993).

### B. *Similar Occupation*

Similar occupation is a significant factor because a worker's exposure to asbestos depends mainly upon his occupation. *See In re New York Asbestos Litig.*, 149 F.R.D. 490, 497 (S.D.N.Y.1993). Ciletti was a sheetmetal worker. Greff worked as a welder. McPadden worked as a mechanist and steamfitter. Moore worked as a mason tender and laborer and was allegedly exposed to asbestos at various construction sites in New York City. Strafford worked as a valve dismantler, and he was allegedly exposed to asbestos while disassembling valves containing asbestos packing.

Although there are differences among the specific occupations of the plaintiffs here, "[a]ll plaintiffs were exposed to asbestos in a similar manner—as tradespeople working with or around products containing asbestos." *In re New York Asbestos Litig.*, 145 F.R.D. at 653. Thus, notwithstanding the individual differences among the occupations of the plaintiffs, shared testimony as to the airborne fibers from the asbestos-containing products with which plaintiffs worked should not change significantly from one case to another. Accordingly, consolidation will "eliminate duplicative general evidence concerning exposure to certain asbestos products." *See In re New York Asbestos Litig.*, 149 F.R.D. at 496.

### C. *Similar Time of Exposure*

The period during which the various plaintiffs were exposed to asbestos products spans from 1940 to 1986, with substantial overlap. All the plaintiffs were exposed during the 1960's; both Greff and Ciletti were exposed in the 1940's, 1950's, 1960's and early 1970's; both Greff and Moore were exposed in the 1980's.

In light of the "considerable overlap" among the various plaintiffs' exposure periods, state of the art testimony will certainly be offered by plaintiffs concerning the entire time period in question. *See In re New York Asbestos Litig.*, 145 F.R.D. at 654.

### D. *Nature and Extent of Disease*

Substantial similarities exist among the diseases alleged by the various plaintiffs. All but one plaintiff, Moore, suffered from mesothelioma, and Moore and Strafford both suffered from lung cancer allegedly caused by exposure to asbestos products.[1]

"When the plaintiffs suffer from the same disease, the economy derived by not rehashing the etiology and pathology of the particular disease will be great, while the concomitant prejudice will be minimal." *Malcolm*, 995 F.2d at 351.

### E. *Whether Plaintiffs Are Living or Deceased*

Each of the five plaintiffs is deceased. Accordingly, there is no risk of prejudice resulting from the consolidation of actions involving living plaintiffs with those involving deceased plaintiffs. *See In re Joint Eastern & Southern Dist. Asbestos Litig.*, 125 F.R.D. 60, 65–66 (E. & S.D.N.Y.1989); *Malcolm*, 995 F.2d at 351.

### F. *Status of Discovery*

The Court is aware of depositions having been taken in half of these actions.

### G. *Commonality of Counsel*

Several courts have noted that the fact that plaintiffs share one counsel favors consolidation. *See, e.g., Wilson v. Johns–Manville Sales Corp.*, 107 F.R.D. 250, 253 n. 1 (E.D.Tex.1985). Here, the same firm, Levy, Phillips & Konigsberg, L.L.P., represents each of the five plaintiffs. *See Malcolm*, 995 F.2d at 352 (plaintiffs "represented by five law firms, each of which played an active role throughout the trial" militated against consolidation).

---

**1.** Strafford allegedly suffered from both mesothelioma and lung cancer.

### H. *Type of Cancer Alleged*

As set forth above, only two types of cancer are alleged by the plaintiffs. Both are potentially terminal, and accordingly the risk of prejudice that would result from consolidating claims based on diseases of varying seriousness is not present here.

Defendants allege that lung cancer, unlike mesothelioma, has not been definitively linked with asbestos exposure. Nonetheless, there has been no showing that any potential prejudice could not be avoided with careful instructions to the jury regarding the different etiology of these two diseases.

Only two diseases need be addressed in these five actions; four plaintiffs suffered from mesothelioma and two suffered from lung cancer. These facts weigh heavily in favor of consolidation, as the evidence regarding each disease will pertain to numerous plaintiffs.

### III. *Consolidation is Warranted Here*

Owens Corning and the plaintiffs have agreed that the *McPadden* and *Strafford* cases may be consolidated. The remaining three cases will also be consolidated for trial. Such consolidation is appropriate in light of the substantial similarities and overlap among these cases in the factors set forth above.

Each of the plaintiffs was exposed to asbestos through his work as a tradesperson. McPadden, Ciletti and Greff were both exposed to asbestos at shipyards. Moore and Ciletti both allege exposure at construction sites. Strafford and McPadden each claim that their fatal cancers were caused by exposure to asbestos gaskets and packing materials made by defendant John Crane with asbestos materials supplied by defendant Raymark Industries, Inc. These similarities weigh strongly in favor of consolidation. Significant economy will be achieved through consolidation, as repetitive testimony regarding exposure to airborne asbestos particles will be eliminated. *See In re New York Asbestos Litig.*, 145 F.R.D. at 653; *In re New York Asbestos Litig.*, 149 F.R.D. at 496.

While the asbestos exposure periods vary somewhat among these five plaintiffs, each was allegedly exposed to asbestos during the late 1950's and/or the 1960's. Ciletti and Greff both allege exposure during the 32–year period between 1941 and 1973. Ciletti, Greff and McPadden each allege exposure during all or part of the 1970's. Greff and Moore both claim exposure during the 1980's. Accordingly, a substantial amount of common proof will be submitted for the state-of-the-art defense in each of these actions, and enormous savings of time and expense will result from consolidation.

Each of the five plaintiffs is deceased. As set forth above, this commonality will reduce the possibility of prejudice that could result from consolidation of cases involve both living and deceased plaintiffs. All but five plaintiffs suffered from mesothelioma. Accordingly, each of the actions alleging mesothelioma will require similar or identical evidence regarding the etiology and pathology of mesothelioma, and the same is true of *Moore* and *Strafford*, the two actions alleging lung cancer. Each of the five plaintiffs also is represented by the same counsel.

Consolidation of the Moore action is appropriate here, notwithstanding certain unique aspects of that case. While Moore is the only plaintiff to base his claim entirely upon his contracting of lung cancer, because Strafford's claim is based in part on lung cancer, there will necessarily be evidence of the etiology and pathology of lung cancer introduced at the trial. Similarly, although Moore is the only plaintiff to allege exposure to asbestos resulting exclusively from his work in the construction field, the risk of exposure from construction work will necessarily enter the trial because Ciletti bases his claim in part on exposure in connection with his work at various construction sites.

### *Conclusion*

For the reasons set forth above, plaintiffs' motion to consolidate is hereby granted.

It is so ordered.