In re JOINT EASTERN AND SOUTH-
ERN DISTRICTS ASBESTOS
LITIGATION.

DRAGO

v.

CELOTEX CORPORATION.

KESSLER

v.

CELOTEX CORPORATION.

OEFELEIN

v.

CELOTEX CORPORATION.

PASKETT

v.

CELOTEX CORPORATION.

PERICH

v.

CELOTEX CORPORATION.

Nos. 87 Civ. 4277 (TPG), 87 Civ. 4572 (RWS), 87 Civ. 4279 (RWS), 87 Civ. 4307 (LBS) and 87 Civ. 4457 (LLS).

United States District Court,
E.D. and S.D. New York.

April 5, 1989.

Morris J. Eisen, P.C. and Perry Weitz, P.C., New York City (Donald I. Marlin, Perry Weitz, of counsel), for plaintiffs.

Kalb, Friedman, Siegelbaum and Moran, New York City (Andrew Constantine, II, Joel Slawotsky, of counsel), for defendant.

SWEET, District Judge.

Defendant Celotex Corporation ("Celotex") has moved under Rule 42(a), Fed.R. Civ.P., to sever four of the five cases naming it as a defendant that have been consolidated for trial. For the reasons set forth below, the motion is denied.

*Prior Proceedings*

These actions are so-called "asbestos cases" that have been the subject of multidistrict treatment for discovery purposes, a process supervised by the Honorable Charles P. Sifton of the Eastern District of New York. Judge Sifton grouped certain of the Southern District cases into "clusters" that share the same plaintiffs' counsel. By letter dated October 5, 1988, Judge Sifton asked me to coordinate the nine actions assigned to Cluster # 3.

After pretrial conferences and the setting of a trial date of March 28, 1989, the cases in Cluster # 3 were settled against all the defendants, except Celotex.[1] The following five cases remained open against Celotex: *Drago*, 87 Civ. 4277 (TPG), *Kessler*, 87 Civ. 4572 (RWS), *Oefelein*, 87 Civ. 4279 (RWS), *Paskett*, 87 Civ. 4307 (LBS),

1. Several asbestos defendants see settlements as the principal means for resolving the claims against them. Celotex is not among this group, however. According to one report, "Celotex Corporation ... is one of the larger asbestos defendants and among those most fiercely opposed to settling claims." New York Times, Apr. 2, 1989, at § 3, p. 1, col. 4.

and *Perich,* 87 Civ. 4457 (LLS). Throughout the period during which pretrial conferences were held, it was understood that the trial of one of the cases in the cluster might promote the resolution of the remaining cases.

When advised of the settlements and Celotex's position on March 28, 1989, the five remaining cases were consolidated for trial over Celotex's objection, and Celotex was granted leave to move to sever. Argument on Celotex's motion was heard on March 31, 1989 and memoranda were received.

*Pending Claims*

In 1906, the Philip Carey Manufacturing Company ("Philip Carey"), an Ohio corporation, began manufacturing, selling, and distributing high temperature industrial insulation products containing asbestos. After a series of corporate mergers, Celotex emerged as Philip Carey's successor in 1972 and continued to manufacture, sell, and distribute insulation containing asbestos. Numerous asbestos victims—including the five plaintiffs here—have sued Celotex, attributing their injuries to exposure to Celotex products.

Plaintiff Rudolph Perich ("Perich"), age seventy-seven, worked from 1929 until 1972 as an insulator installing asbestos products, including pipe covering, cement, and blocks. During his career, Perich worked in almost every powerhouse in the New York metropolitan area and at numerous major construction sites, working almost exclusively through Local 12. Perich alleges that he suffers from extensive pleural fibrosis and calcifications and from severe restrictive impairment of his breathing as measured by a pulmonary function test. From 1930 until 1974, Perich smoked an average of three cigars per day.

Plaintiff Gerald Drago ("Drago"), age fifty-eight, worked from 1948 until 1985 as a pipe coverer installing asbestos pipe covering, cement, and blocks. Working through Local 12, Drago served at numerous construction sites and hospitals in the New York metropolitan area. Drago, who claims to suffer from interstitial pulmonary fibrosis and pleural fibrosis, is a non-smoker.

Plaintiff James Oefelein ("Oefelein"), who died in 1971 at age sixty-three, worked as a boilermaker from 1941 until 1945 at the Brooklyn Navy Yard where he insulated boilers using asbestos blocks, cement, and pipe covering. From 1946 until he died in 1971, Oefelein worked through Local 12 as a pipe coverer applying asbestos-containing blocks, cement, and pipe covering at numerous powerhouses and major construction sites in the New York metropolitan area. Oefelein died of malignant pleural mesothelioma, and his autopsy revealed extensive interstitial pulmonary fibrosis. From 1941 until 1971, Oefelein smoked an average of one pack of cigarettes per day.

Plaintiff Conrad Kessler ("Kessler"), who died in 1987 at age sixty, worked as a pipe coverer full-time from 1940 until 1960 and part-time from 1960 until 1966. Working through Local 12, Kessler applied asbestos pipe covering, cement, and blocks at several powerhouses and many major construction sites in the New York metropolitan area. Kessler died of lung cancer that allegedly resulted from asbestos exposure and had been diagnosed with interstitial pulmonary fibrosis prior to his death. He smoked an average of one pack of cigarettes per day from 1958 until 1984.

Plaintiff Harold Paskett ("Paskett"), age fifty-five, served as a metal latherer from 1952 until 1987. This involved installing metal during construction and renovation projects at major construction sites, hospitals, and powerhouses in the New York metropolitan area. Paskett alleges exposure to asbestos from asbestos workers working nearby, from the products they installed, and from removing asbestos insulation to perform his duties as a metal latherer. Paskett has been diagnosed as having larynx and lung cancer, as well as interstitial pulmonary fibrosis. He smokes an average of one pack of cigarettes per day.

Drago, Paskett, and Perich have sued Celotex for personal injury, seeking compensatory and punitive damages. Kessler and Oefelein have brought wrongful death actions against Celotex. Kessler seeks compensatory and punitive damages, and

Oefelein seeks compensatory damages only.

*Consolidation for Trial*

1. Standards Under Rule 42(a)

Rule 42(a) provides:

When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

█ This rule grants courts broad discretion to manage their dockets efficiently by expediting trials and eliminating unnecessary repetition and confusion. *See Hendrix v. Raybestos–Manhattan, Inc.,* 776 F.2d 1492, 1495 (11th Cir.1985); *Dupont v. Southern Pacific Co.,* 366 F.2d 193, 195 (5th Cir.1966), *cert. denied,* 386 U.S. 958, 87 S.Ct. 1027, 18 L.Ed.2d 106 (1967). In exercising its discretion, a court should weigh the time and cost savings to the parties, witnesses, and the court against the risks of prejudice and confusion resulting from consolidation. *See Arnold v. Eastern Air Lines, Inc.,* 681 F.2d 186, 193 (4th Cir.1982), *cert. denied,* 460 U.S. 1102, 103 S.Ct. 1801, 76 L.Ed.2d 366 (1983) and 464 U.S. 1040, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984). A court also should consider the extent to which it can alleviate the risks of prejudice and confusion by giving cautionary instructions to the jury and by controlling the manner in which the claims and defenses are submitted to the jury for deliberation. *See Hendrix v. Raybestos–Manhattan, Inc.,* 776 F.2d 1492, 1495 (11th Cir.1985).

2. Efficiency Considerations

As one court has observed, "[l]itigation premised on asbestos exposure is by far the largest area of products liability litigation in the United States today." *Wilson v. Johns–Manville Sales Corp.,* 107 F.R.D. 250, 251 (S.D.Tex.1985). According to one estimate, asbestos victims continue to file cases at a rate of well over 1,000 per month. *See* New York Times, Apr. 2, 1989, at § 3, p. 1, col. 4. New York offers no exception to the national trend—there currently are some 2500 asbestos cases pending in the federal courts in the Southern and Eastern Districts.

Many of these cases will settle, but those that proceed to trial threaten a substantial burden on the judicial system. Asbestos trials are prolonged affairs, often lasting two to three weeks. *See id.* (noting "the lengthy nature of an asbestos trial"). To try each of these cases could tie up the courts for years.

Consolidation of asbestos claims for trial offers one of the best means available for stemming this flood. As one court has observed:

Consolidation will result in substantial time-savings. In each group of claims being today consolidated for trial, there exists a body of evidence common to each claimant's case. Common evidence is expected to include background evidence as to worksite, occupation, type of asbestos products used at the site, product identification information, general scientific evidence concerning exposure time, general medical evidence regarding asbestos related diseases and causation, and type of illness. When six to eight claims are consolidated for trial, that information can be presented once rather than six to eight times in individual trials.

*In re all Asbestos Cases Pending in the United States District Court for the District of Maryland,* slip op., at 7 (D.Md. Dec. 16, 1983).

Consolidation is desirable, therefore, provided the claims present common issues of law and fact and undue prejudice or confusion do not ensue.

3. Consolidation of Asbestos Cases

Several courts have consolidated asbestos claims for trial, and their analysis elucidates the factors for assessing when consolidation of multiple asbestos claims is appropriate.

In *Hendrix v. Raybestos–Manhattan, Inc.,* 776 F.2d 1492 (11th Cir.1985), for ex-

ample, the Eleventh Circuit upheld a lower court's consolidation for trial of claims by four insulators suffering from asbestosis. It found similarities regarding the manner in which the workers were exposed, the extent of their diseases, and their theories of liability. All four plaintiffs had worked as insulators out of the same union hall on many of the same jobs during the same time frame. They all suffered asbestosis, were being treated by the same physician, and had nearly identical medical prognoses. Moreover, their theories of liability were indistinguishable.

In *Oman v. Johns–Manville Corp.*, 764 F.2d 224 (4th Cir.), *cert. denied*, 474 U.S. 970, 106 S.Ct. 351, 88 L.Ed.2d 319 (1985), the Fourth Circuit ruled that the trial court did not abuse its discretion by consolidating for trial the claims of four plaintiffs who allegedly contracted asbestosis while serving as land-based shipyard workers for the same company.

A panel of Maryland district court judges set forth guidelines for consolidating asbestos claims for trial in *In re all Asbestos Cases Pending in the United States District Court for the District of Maryland,* slip op. (D.Md. Dec. 16, 1983). It proposed consolidation for trial of no less than five but no more than eight claims selected according to the following criteria:

> (1) common worksite; (2) similar occupation; (3) similar time of exposure; (4) type of disease; (5) whether the plaintiffs were living or deceased; (6) status of discovery in each case; (7) whether all plaintiffs were represented by the same counsel; and (8) type of cancer alleged (*e.g.*, lung, colon, mesothelioma).

*Id.* at 3.

The defendants objected to consolidation, arguing that it would "create, by accumulation of evidence, the impression that all ten or fifteen defendants are responsible for the injury to each plaintiff," *id.* at 7, and that "the jury will be confused by the different work histories, varying exposure periods, and the different medical evidence which must be presented by each plaintiff and countered by each defendant." *Id.* at 8. The panel acknowledged these con-

cerns, but found that juries often consider complex cases competently and that the trial judge could take precautionary measures to reduce confusion and prejudice.

In *Wilson v. Johns–Manville Sales Corp.*, 107 F.R.D. 250 (S.D.Tex.1985), the court set forth a plan for consolidating fifty asbestos claims to try the issues of product defectiveness and punitive damages. It then proposed breaking that group into smaller clusters of five cases each for trials regarding the more "individualistic" issues of exposure, causation, injury, and compensatory damages. Significantly, the court noted: "It has been this Court's experience that a jury can adequately comprehend and differentiate the evidence when 5 asbestos cases are joined together for trial." *Id.* at 253. In a footnote, the court added:

> On three occasions during the past year and a half the Court has successfully joined together the cases of 5 asbestos claimants for trial. The Court has found that this procedure significantly conserves the resources of both the Court and the litigants. In each of these cases, as in the instant cases, the same counsel represented all plaintiffs.

*Id.* at 253 n. 1.

The court in *Neal v. Carey Canadian Mines, Ltd.*, 548 F.Supp. 357 (E.D.Pa.1982), *aff'd*, 760 F.2d 481 (3rd Cir.1985), consolidated for trial the claims of fifteen plaintiffs who sued Celotex, alleging that they had contracted asbestos-related diseases while working at one of Philip Carey's manufacturing plants. The court found that common issues of law and fact predominated over individual issues, noting that the plaintiffs had worked at the same plant over substantially the same period of time. *See id.* at 383. Significantly, the consolidated trial involved both personal injury and wrongful death claims—three of the fifteen claimants allegedly had died from asbestos-related diseases.

■ Several factors emerge from these cases for courts to consider in determining whether consolidation for trial under Rule 42(a) is appropriate. These factors include:

a) manner of exposure

b) time of exposure

c) nature and extent of disease

d) similarity of claims

e) commonality of counsel

f) number of claims consolidated

g) availability of precautionary measures

### 4. Consolidation in This Case

■ Applying these factors to the facts in this case reveals that consolidation for trial of the five remaining Cluster # 3 claims is warranted.

#### a. Manner of Exposure

All five plaintiffs were exposed to asbestos in a similar manner—as tradespeople working with or around products containing asbestos. Perich worked as an insulator, Drago, Oefelein, and Kessler served as pipe coverers, and Paskett was a metal latherer. Four of the five—Perich, Drago, Oefelein, and Kessler—worked out of the same union, Local 12, and all participated in projects located in the New York metropolitan area.

A review of the particular sites at which the claimants labored, however, reveals some differences. Perich worked at forty-eight different sites, Paskett at twenty-four, Drago and Oefelein at twenty-two, and Kessler at only two. Some overlap emerges—Kessler, Offelein, and Perich worked at the World Trade Center, Kessler and Offelein worked at the Pan Am Building, Drago and Offelein worked at Wagner College, and Offelein and Perich worked at the Fourteenth Street Powerhouse. However, the overlap is not substantial in light of the fact that the five plaintiffs served at more than one hundred different work sites during their collective exposure period.

Despite these differences, similar patterns emerge that alleviate the potential for confusion. All five of the claimants worked at construction sites, four of the five worked at powerhouses, and two worked at hospitals. Thus, although the testimony regarding particular sites may differ for each claimant, consolidation will avoid duplication regarding the factors that are common to the shared groupings of sites.

#### b. Time of Exposure

The period during which the claimants were exposed to asbestos products spans from 1929 until 1987, with substantial overlap. All five plaintiffs worked during the 1950s and 1960s, Perich and Kessler served during the 1940s, and Drago and Paskett were exposed during the 1970s and early 1980s.

#### c. Nature and Extent of Disease

The claimants allege a variety of asbestos-related diseases, including pleural fibrosis, interstitial pulmonary fibrosis, malignant pleural mesothelioma, lung cancer, larynx cancer, and severe restrictive functioning of breathing. Two of the claimants—Kessler and Oefelein—have died from their afflictions, and the three remaining plaintiffs—Drago, Paskett, and Perich—may have differing medical prognoses.

However, some similarities emerge. Four of the five claimants—Drago, Oefelein, Kessler, and Paskett—suffer from interstitial pulmonary fibrosis. Kessler and Paskett also were diagnosed with lung cancer, and Perich and Drago suffer from pleural fibrosis. Moreover, four of the five plaintiffs share similar smoking patterns. These similarities indicate that consolidation will reduce substantially the amount of medical evidence admitted at trial. Indeed, plaintiffs' counsel suggested at oral argument that he might introduce only one medical expert for all five cases.

#### d. Similarity of Claims

Three of the plaintiffs—Drago, Paskett, and Parich—assert personal injury claims, and the remaining two claimants—Kessler and Offelein—have sued for wrongful death. All of the plaintiffs except Offelein seek punitive damages, as well as compensatory damages.

Personal injury and wrongful death claims present substantially similar legal issues. However, the presence of wrongful death claims and personal injury actions in a consolidated trial is somewhat troublesome because of the potential for prejudice

it poses. As Celotex asserted at oral argument, the dead plaintiffs may present the jury with a powerful demonstration of the fate that awaits those claimants who are still living. The prejudice lies in the possibility that the living claimants' asbestos-related diseases in fact may not prove fatal.

Other courts that have confronted this problem have consolidated personal injury and wrongful death claims for trial. In *Neal v. Carey Canadian Mines, Ltd.*, 548 F.Supp. 357 (E.D.Pa.1982), *aff'd*, 760 F.2d 481 (3rd Cir.1985), for example, the court consolidated fifteen claims, three of which were for wrongful death. Similarly, Judge Sifton of the Eastern District of New York tried a wrongful injury claim together with a wrongful death claim in *Higgins*, 87 Civ. 537, and *Johnson*, 87 Civ. 724. These courts' experiences, as well as the availability of cautionary instructions, convinces this court that consolidation is appropriate, notwithstanding the coexistence of personal injury and wrongful death claims.

The presence of other similar legal issues also warrants consolidation. Most importantly, all of the claims will involve proof of product defectiveness, particularly state of the art evidence. Four of the five plaintiffs—Drago, Kessler, Paskett, and Perich—also seek punitive damages.[2] In *Wilson v. Johns–Manville Sales Corp.*, 107 F.R.D. 250, 252 (S.D.Tex.1985), the court noted:

> It has been the Court's experience that the presentation of the state of the art evidence, offered for the issues of product defectiveness and punitive damages, has become standardized in that it differs little from trial to trial and is not specifically tailored to a particular plaintiff's case. The Court has further learned that the state of the art phase of an asbestos trial constitutes an appreciable portion of the total trial time.

Consolidation, therefore, offers substantial efficiency gains from joint consideration of common issues of law.

### e. Commonality of Counsel

Several courts have noted that the fact that plaintiffs share one counsel favors consolidation. *See, e.g., Wilson v. Johns–Manville Sales Corp.*, 107 F.R.D. 250, 253 n. 1 (S.D.Tex.1985). Here, the same firm represents all five claimants. Moreover, unlike other consolidated asbestos trials, this case involves only one defendant. The presence of one plaintiffs' counsel and one defendant substantially reduces the potential for confusion in a consolidated trial.

### f. Number of Claims Consolidated

The potential for confusion is substantially reduced when relatively few cases are consolidated for trial. *See, e.g., Hendrix v. Raybestos–Manhattan, Inc.*, 776 F.2d 1492 (11th Cir.1985) (consolidating four claims); *Oman v. Johns–Manville Corp.*, 764 F.2d 224 (4th Cir.1985) (consolidating four claims); *In re all Asbestos Cases Pending in the United States District Court for the District of Maryland*, slip op. (D.Md. Dec. 16, 1983) (proposing consolidation of no less than five but not more than eight claims); *Wilson v. Johns–Manville Sales Corp.*, 107 F.R.D. 250 (S.D. Tex.1985) (proposing consolidation of fifty cases to try product defectiveness and punitive damages and of five claims to try exposure causation, injury, and compensatory damages). The court in *Neal v. Carey Canadian Mines, Ltd.*, 548 F.Supp. 357 (E.D.Pa.1982), *aff'd*, 760 F.2d 481 (3rd Cir. 1985), consolidated fifteen claims for trial, but the similarity among the claimants in other respects made this number less problematic. Here, this court will consolidate five claims for trial, a number likely to reduce the potential for confusion.

### g. Availability of Precautionary Measures

Although all five claims present common issues of law and fact favoring consolidation, some factors—notably, the limited overlap between the work sites at which the plaintiffs were exposed, the presence of wrongful death and personal injury claims in the same trial, and the differing medical prognoses—suggest the potential for con-

---

**2.** Celotex has moved to have punitive damages in these cases declared unconstitutional. That motion remains under advisement, but will be determined during the trial.

fusion and prejudice. However, these factors alone need not defeat consolidation because of the availability of precautions.

It is too early in the proceedings to identify the particular measures that will work best here, but several courts have set forth some available options. In *Hendrix v. Raybestos–Manhattan, Inc.*, 776 F.2d 1492, 1496–97 (11th Cir.1985), for example, the court noted:

> In deciding to consolidate appellees' claims for trial, the court rejected appellants' argument that the similarities of the claims were superficial and that the differences in appellees' exposure to asbestos dust would make it difficult for the jury to consider each claim on its own merits. To ensure that each claim would receive separate consideration, the court announced that it would adopt the following procedure at trial; each juror would be given a notebook, tabbed for each plaintiff and each defendant, and during the presentation of evidence the jurors would be given time, as necessary, to make notes.
>
> \*  \*  \*  \*  \*  \*

The district judge took considerable care during the trial to minimize any confusion that might result from trying the four cases together. At one point, for example, he cautioned the parties to present their evidence slowly so the jurors could make adequate notes. On at least four different occasions he gave a cautionary instruction reminding the jurors that, during their deliberations, they would have to consider each of the plaintiff's claims separately.

Similarly, in *Neal v. Carey Canadian Mines, Ltd.*, 548 F.Supp. 357, 383 (E.D.Pa. 1982), *aff'd*, 760 F.2d 481 (3rd Cir.1985), the court observed:

> Supplier defendants have not shown any demonstrable prejudice resulting from the consolidation of all fifteen claims. Special interrogatories were submitted by the Court with respect to each individual plaintiff to be answered with respect to each individual defendant and were so answered by the jury. Moreover, individual summary sheets were provided to the jury for each individual plaintiff which listed the plaintiff's name, dates of employment, and diagnosis by plaintiff's medical expert.... Photographs of the individual plaintiffs were available upon the request of the jury and plaintiffs were present throughout most of the trial.

*Interlocutory Appeal*

 Celotex has requested this court to certify an order pursuant to 28 U.S.C. § 1292(b) permitting it to appeal from this decision. That request is denied. *See Nolfi v. Chrysler Corp.*, 324 F.2d 373, 324 (3d Cir.1963). An intermediate appeal will not expedite the resolution of these actions.

*Conclusion*

For the reasons set forth above, the cases are consolidated for trial on April 11, 1989.

It is so ordered.