**In re ETHYL CORPORATION, USX Corporation, Todd Shipyards Corporation and Texas City Refining, Inc., Relators.**

No. 96–0931.

Supreme Court of Texas.

Argued Jan. 16, 1997.

Decided July 14, 1998.

**5.** *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997) (citation omitted).

Susan C. Stevenson, Houston, Hubert A. Crouch, III, Dallas, B. Stephen Rice, George R. Murphy, Elena DiIorio, Houston, William M. Tolin, III, Beaumont, for Relators.

Ian P. Cloud, Richard N. Countiss, John E. Williams, Jr., Houston, for Respondent.

OWEN, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, ENOCH, SPECTOR, BAKER, ABBOTT and HANKINSON, Justices, joined.

In this original proceeding, we are called upon to determine whether the trial court abused its discretion by grouping for trial the premises liability claims of twenty-two workers or their family members against five defendants for deaths or injuries allegedly caused by exposure to asbestos. Because the record is silent with regard to many factors that would inform our decision on the commonality or conversely the dissimilarity of these claims, the relators have not demonstrated that the trial court abused its discretion. Accordingly, we deny the petition for writ of mandamus.

## I

The underlying suit was brought by numerous plaintiffs who were represented by the same counsel, and at one time, this single suit encompassed the claims of 459 workers or their families, each of whom sued one or more of sixty-nine defendants. All claims are against premise owners or occupiers for the injuries or deaths of workers allegedly exposed to asbestos or asbestos-containing materials at industrial sites. The workers were employed by various independent con-

tractors and were sent onto these sites. Settlements and summary judgments reduced the number of claims remaining for trial to those of 111 workers or their families against one or more of five defendants. Those defendants are Ethyl Corporation, USX Corporation, Todd Shipyards, Texas City Refining, Inc., and Associated Metals, doing business as Tex-Tin. Each plaintiff has also asserted claims for the same injuries or deaths in separate suits against manufacturers of asbestos-containing products. All asbestos products suits in Harris County have been assigned to a special asbestos docket, but at the time this case was submitted for argument, the premises cases had not been included in that docket.

In an attempt to pare down the diverse premises liability claims at issue in this proceeding to manageable numbers of plaintiffs for trial, the trial court directed the parties to attempt to agree on the first grouping. When no agreement was reached, the court selected twenty-five claims with one predominant factor in common—the separate actions against products manufacturers had been resolved. The defendants objected to trying these twenty-five claims together, contending that each should be tried separately. The defendants filed written objections and motions, which the trial court denied. The number of claims ultimately set for trial was reduced to twenty-two when counsel for the plaintiffs determined that three of the corresponding but separate products liability actions had not been resolved.

The twenty-two workers whose claims or derivative claims were chosen for trial were allegedly exposed to asbestos or asbestos-containing products at varying times from 1941 to 1981. The lengths of exposure ranged from just over one year to more than thirty-eight years. None of the workers had been on the premises of all five defendants. Of the twenty-two workers, eleven had been on the premises of only one defendant, six worked at the premises of two defendants, four worked at the premises of three defendants, and one worked at the premises of four defendants. All of the workers had also been exposed to asbestos at one or more of forty-one sites other than those of the defendants.

The nature of the injuries allegedly suffered by these workers differ in severity, ranging from thickening of the pleural lining, to asbestosis, lung cancer, and mesothelioma. Seven of the workers were deceased at the time these claims were set for trial.

Four of the five defendants sought writ of mandamus from the court of appeals, which denied any relief in an unpublished per curiam opinion. These defendants now seek mandamus relief from this Court. We granted leave to file in this case and in *In re Bristol–Myers Squibb Co.*, 975 S.W.2d 601 (Tex.1998), which we also decide today.

## II

The mass tort litigation that has proliferated over the last two decades has caused departures from traditional ways in which cases have been filed, discovery has proceeded, and trials have been set. As already noted, the case before us is a single suit in which a large number of plaintiffs have asserted separate claims against one or more of five defendants. Technically speaking, this mandamus proceeding does not concern consolidation, because all plaintiffs and all defendants were already parties to the same suit when certain of the claims were selected for a separate trial. The record indicates that counsel for the plaintiffs did not contend that all 111 claims should be tried at once. Rather, plaintiffs' counsel as well as the trial court contemplated that the separate claims would be aggregated into groups for trial purposes.

Consolidation is governed by Rule 174(a) of the Texas Rules of Civil Procedure, which provides:

> **(a) Consolidation.** When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

TEX.R. CIV. P. 174(a).

Subpart (b) of the same rule governs separate trials:

**(b) Separate Trials.** The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues.

TEX.R. CIV. P. 174(b).

In their briefing in this Court, the defendants at times refer to "consolidation," and at other times refer to the trial court's failure to order "separate trials." The plaintiffs refer only to the "consolidation" of their claims and rely on Rule 174(a) as authority for the trial court's action rather than on Rule 174(b). The record in the trial court reflects that the defendants made it abundantly clear that they objected to a single trial of twenty-two claims. Regardless of whether the issue is denominated one of consolidation, separate trials, or severance, the merits of the controversy were fully presented to and ruled upon by the trial court when it repeatedly denied the defendants' objections to "consolidation" and motions for "separate trials." The question squarely before us is whether the trial court abused its discretion in setting these twenty-two claims for a single trial.

### III

Before the dawn of mass torts, this Court considered the extent of a trial court's discretion under Rule 174(b) to decline to order separate trials. In *Womack v. Berry,* 156 Tex. 44, 291 S.W.2d 677 (1956), we held that although the word "may" in Rule 174(b) indicates that the trial court has discretion, that discretion is not unlimited. *Id.* at 683. A trial court "is required to exercise a sound and legal discretion within limits created by the circumstances of the particular case." *Id.* We observed that the express purpose of Rule 174(b) was to further convenience, to avoid prejudice, and to promote the ends of justice. *Id.* The trial court has no discretion to deny separate trials when an injustice will result:

> When all of the facts and circumstances of the case unquestionably require a separate trial to prevent manifest injustice, and there is no fact or circumstance supporting or tending to support a contrary conclu-

sion, and the legal rights of the parties will not be prejudiced thereby, there is no room for the exercise of discretion. The rule then is peremptory in operation and imposes upon the court a duty to order a separate trial.

*Id.* Many considerations under Rule 174(b) are shared under Rule 174(a), and the paramount objective of preventing injustice obtains whether the question is one of separate trials or of consolidation.

The principles we espoused in *Womack* remain sound, but over the last twenty years, our legal system has been faced with new challenges. The advent of mass torts necessitates that our courts devise a systematic means of resolving large numbers of cases that have issues in common. We must resolve such claims in a timely manner while ensuring that justice is dispensed to each individual plaintiff and defendant in the process. The rights of the parties to a fair trial cannot be compromised in the name of judicial economy.

Scholars and courts have recognized that a mass tort has a life cycle. *See, e.g.,* McGovern, *An Analysis of Mass Torts for Judges,* 73 TEX. L.REV. 1821, 1841–45 (1995). Professor McGovern opines that a mass tort reaches maturity when

> "there has been full and complete discovery, multiple jury verdicts, and a persistent review in the plaintiffs' [contentions]. Typically at the mature stage, little or no new evidence will be developed, significant appellate review of any novel legal issues has been concluded, and at least one full cycle of trial strategies has been exhausted."

*Id.* at 1843 (quoting McGovern, *Resolving Mature Mass Tort Litigation,* 69 B.U. L. REV. 659, 659 (1989)).

Asbestos litigation, particularly asbestos products cases, has achieved maturity. Our state trial courts have gained considerable experience in managing the thousands of claims asserted in asbestos litigation. By and large, our courts appear to be coordinating pretrial discovery and scheduling trials in a satisfactory manner, given the paucity of appeals challenging trial settings of multiple

claims. We have found only one reported decision of a Texas court in which the propriety of a consolidation of claims was raised. *See Owens–Corning Fiberglas Corp. v. Martin,* 942 S.W.2d 712, 715–20 (Tex.App.—Dallas 1997, no writ) (holding that consolidation of the claims and derivative claims of twelve workers against a single manufacturer of asbestos products was not error). Because of the experience our trial courts have gained over time in asbestos litigation, they now have a track record on which to base decisions about consolidation and separate trials. We can glean from the experiences of our Texas courts and those reported by federal courts that it is possible to try more than one asbestos-related claim in a single trial. The question in each proposed consolidation is how many more.

The court of appeals in *Martin* identified several factors that it and other courts have found useful. These are known as the Maryland factors. They were first articulated in an unreported federal district court decision, *In re All Asbestos Cases Pending in the United States District Court for the District of Maryland,* slip op. at 3 (D.Md. Dec. 16, 1983) (en banc). The Maryland factors are "(1) common worksite; (2) similar occupation; (3) similar time of exposure; (4) type of disease; (5) whether plaintiffs were living or deceased; (6) status of discovery in each case; (7) whether all plaintiffs were represented by the same counsel; and (8) type of cancer alleged." *Martin,* 942 S.W.2d at 717 (referring to the Maryland factors as the *Malcolm* factors); *see also Malcolm v. National Gypsum Co.,* 995 F.2d 346, 350–51 (2d Cir.1993). As the number of Maryland factors that different cases have in common increases, the number of those claims that can be tried together may increase. But there is no mathematical formula, and some

of the Maryland factors should be given more weight than others. The maximum number of claims that can be aggregated is not an absolute, and the particular circumstances determine the outer limits beyond which trial courts cannot go.

The experiences of the federal courts in reviewing consolidations in asbestos litigation are enlightening. The federal rules governing consolidation and separate trials are similar to our rules of procedure. Our Rule 174 was modeled after federal Rule 42.[1] The federal courts have recognized, as have our courts, that the discretion to consolidate is not unfettered. *See, e.g., Johnson v. Celotex Corp.,* 899 F.2d 1281, 1285 (2d Cir.), *cert. denied,* 498 U.S. 920, 111 S.Ct. 297, 112 L.Ed.2d 250 (1990). A court contemplating or reviewing consolidation must weigh the risk of prejudice or confusion against economy of scale:

> [T]he court must determine[ ] "[w]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives."

*Hendrix v. Raybestos–Manhattan, Inc.,* 776 F.2d 1492, 1495 (11 th Cir.1985) (second alteration in original) (quoting *Arnold v. Eastern Air Lines, Inc.,* 681 F.2d 186, 193 (4 th Cir.1982), *cert. denied,* 460 U.S. 1102, 103 S.Ct. 1801, 76 L.Ed.2d 366 (1983)), *quoted in Johnson,* 899 F.2d at 1285. While considerations of judicial economy are a factor, "[c]onsiderations of convenience and economy must yield to a paramount concern for a fair

1. Rule 42 provides:

**RULE 42. CONSOLIDATION; SEPARATE TRIALS**

(a) **Consolidation.** When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

(b) **Separate Trials.** The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States. Fed.R.Civ.P. 42.

and impartial trial." *Johnson*, 899 F.2d at 1285.

Generally speaking, it seems that the federal courts have met with success in trying five or fewer claims at a time, but that larger numbers of claims in a single trial have presented problems, with some notable exceptions. In the Brooklyn Navy Yard asbestos litigation, Judge Weinstein consolidated sixty-four cases for trial. *In re E. & S. Dists. Asbestos Litig.*, 772 F.Supp. 1380 (E. & S.D.N.Y.1991), *aff'd in part & rev'd in part sub nom. In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831 (2d Cir.1992). The consolidation issue was not appealed, but the Second Circuit later indicated in *Malcolm v. National Gypsum Co.*, 995 F.2d 346, 353 (2d Cir.1993) that it approved of the consolidation. *See also Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1006 (2d Cir.1995) (observing that the consolidation in the Brooklyn Navy Yard litigation "would have passed muster"), *vacated on other grounds*, 518 U.S. 1031, 116 S.Ct. 2576, 135 L.Ed.2d 1091 (1996). The Second Circuit pointed out, however, that over ninety percent of the asbestos exposure in the Brooklyn Navy Yard case had occurred at a single worksite that was "subject to the uniformity in procurement and practice typical of the Navy." *Malcolm*, 995 F.2d at 353. The court also emphasized that "[b]ecause uniformity is a way of life with the military, the commonality of the 64 Phase I cases cannot be overstated." *Id.* The same manufacturers and distributors were involved, and workers who performed similar occupations during similar time frames were likely to have experienced exposure in the same way. *See id.*

The court in *Malcolm*, however, readily distinguished the Brooklyn Navy Yard litigation from the facts presented in the appeal that was then before it and held that the trial court had consolidated too many disparate claims for trial. *See id.* at 354. In *Malcolm*, the district court tried the claims of forty-eight asbestos plaintiffs against twenty-five defendants who owned or operated "40–odd" power plants, together with those defendants' claims for contribution or indemnity against more than 200 third-party defendants. The plaintiffs, collectively, had been exposed at over 250 sites. The plaintiffs'

occupations varied, as did their diseases, and there were wide-ranging degrees and times of exposure. The Second Circuit applied the Maryland factors and concluded that the "sheer breadth of the evidence made [the precautions taken by the trial court] feckless in preventing jury confusion." *Id.* at 352.

The Second Circuit had previously approved the consolidated trial of the claims of two asbestos plaintiffs against three defendants. *See Johnson*, 899 F.2d at 1285. Similarly, the Eleventh Circuit upheld the consolidation of the claims of four workers whose claims were very similar. *See Hendrix*, 776 F.2d at 1495–96. Each of the workers in *Hendrix* had asbestosis, had been insulators, were exposed within the same time frames, and two of the workers were brothers who worked at many of the same sites. *See id.*

More recently, the Second Circuit found no abuse of discretion in a consolidated trial of somewhat more diverse claims. *See Consorti*, 72 F.3d at 1008. Although the injuries to or the deaths of only four workers were at issue and all of them suffered from mesothelioma, the suit was against numerous manufacturers of asbestos products. *See id.* at 1005. There were dissimilarities in worksites, occupations, and times of exposure, and two of the four workers had died. *See In re New York Asbestos Litig.* 149 F.R.D. 490, 496–98 (S.D.N.Y.1993) (discussing the Maryland factors), *aff'd sub nom. Consorti*, 72 F.3d 1003. Even though some of the Maryland factors weighed against consolidation, the Second Circuit emphasized that use of those factors was a tool, not a substitute, for addressing the ultimate question regarding consolidation. That question was "whether the consolidation caused such confusion or prejudice as to render the jury incapable of finding the facts on the basis of the evidence." *Id.* at 1008. The court discerned no jury confusion in the trial of these four claims. *See id.*

That was not the case in *Cain v. Armstrong World Industries*, 785 F.Supp. 1448 (S.D.Ala.1992), another asbestos suit. The personal injury and wrongful death claims of thirteen workers or their families were consolidated for trial. Although in the majority

of the consolidated claims, exposures allegedly occurred at the same site, substantially the same defendants were named in each case, and the defenses and state-of-the-art evidence were the same, the district court concluded after trial that "the consolidation of such a large number of actions involving both personal injury and wrongful death resulted in prejudicial error." *Id.* at 1451. One indication of prejudice was the size of the damage awards, which the court found excessive and unsupported by the evidence in many instances. The utilization of jury aids had not alleviated the confusion:

> It is evident (unfortunately, in hindsight) that despite all the precautionary measures taken by the Court (e.g., juror notebooks, cautionary instructions before, during and after the presentation of evidence, special interrogatory forms) the joint trial of such a large number of differing cases both confused and prejudiced the jury. This confusion and prejudice is manifest in the identical damages awarded in the noncancer personal injury cases and in the cancer personal injury cases, the relatively short deliberation time as well as in the inflated amounts of many of the damage awards and the lack of evidence supporting some of the damages in several cases.

*Id.* at 1455.

The district court recounted that prior to this trial, five trials of consolidated asbestos cases had occurred in that district. In one, nine actions were consolidated, and in the others, no more than four actions had been consolidated. The *Cain* court observed that there was a strong indication that the jury in those cases had considered each individual claim on its merits. *See id.* at 1455–56. The district court also noted the *Johnson* and *Hendrix* decisions, in which two and four claims, respectively, had been consolidated successfully. *Id.* at 1455. The *Cain* court summarized its experience by saying that the consolidated trial of claims of thirteen workers allowed the plaintiffs to overwhelm the jury:

> The "Try-as-many-as-you-can-at-one-time" approach is great if they all, or most, settle; but when they don't, and they didn't here, thirteen shipyard workers, their wives, or executors if they have died, got a chance to do something not many other civil litigants can do—overwhelm a jury with evidence. Evidence that would not have been admissible in any single plaintiff's case had these cases been tried separately [sic]. As the evidence unfolded in this case, it became more and more obvious to this Court that a process had been unleashed that left the jury the impossible task of being able to carefully sort out and distinguish the facts and law of thirteen plaintiffs' cases that varied greatly in so many critical aspects.

*Id.* at 1457. The district court concluded that when fewer cases are consolidated for trial, the jury is better able to consider the cases separately and return verdicts based on the facts of each case. *See id.* at 1456.

While most of the reported decisions concerning consolidation of mass tort litigation have involved asbestos, at least one federal appellate court has applied the Maryland factors to litigation involving repetitive stress injuries. *See In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir.1993). In issuing writ of mandamus, the Second Circuit concluded that the consolidation of large numbers of disparate claims against different manufacturers was an abuse of discretion, even for discovery purposes. *See id.* at 373–74. The plaintiffs were engaged in many different occupations and suffered from injuries and conditions that varied widely and could have been caused by something other than the defendants' conduct. *See id.* at 374. The defendants manufactured or distributed "a variety of mechanical devices with differing propensities, if any, to cause the harm alleged." *Id.* at 373. Reiterating that convenience and economy must yield to a paramount concern for a fair and impartial trial, the Second Circuit admonished:

> "The systemic urge to aggregate litigation must not be allowed to trump our dedication to individual justice, and we must take care that each individual plaintiff's—and defendant's—cause not be lost in the shadow of a towering mass litigation."

*Id.* (quoting *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 853 (2d Cir.1992)).

When faced with very different facts, a New York state court approved the consolidation of claims by four plaintiffs against one defendant for repetitive stress injuries. *See Aikman v. Atex, Inc.*, 224 A.D.2d 180, 637 N.Y.S.2d 123 (N.Y.App.Div.1996). The worksites, occupations, and times of exposure were similar, and the products at issue were a limited number of keyboards manufactured by a single defendant. Further, the trial court empaneled four separate juries for each case. *Id.* at 123–24.

The facts presented in this mandamus proceeding lie on a continuum somewhere between *Malcolm* (48 plaintiffs, 25 defendants, and over 200 third-party defendants) and *Consorti* (4 workers with the same disease but multiple defendants and worksites). We now turn to whether the trial court abused its discretion in grouping for trial the particular claims before us.

## IV

We first recognize the practicalities involved in setting cases for trial and the difficulties encountered by trial courts. A court may join cases for a single trial with the expectation that some will settle before trial commences. The number of cases initially set might exceed the number that can be tried together without confusion or prejudice. But, by the time the trial date is reached, the number and character of claims that remain to be tried may be within the bounds of the trial court's discretion to group them for a single trial.

Trial courts must be very cautious both in choosing the cases that are initially set and in proceeding with the actual trial to ensure that the process remains fair to all. Even when a court sets cases for trial with the expectation that some will settle, the process cannot be abused. Setting far more cases than can be tried would present a serious issue. *Cf. In re Rhone–Poulenc Rorer Inc.*, 51 F.3d 1293, 1299 (7th Cir.) (holding that the trial court abused its discretion in forcing the "defendants to stake their companies on the outcome of a single jury trial, or be forced by fear of the risk of bankruptcy to settle"), *cert. denied* 516 U.S. 867, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995); *see also* Friendly, *Federal Jurisdiction: A General View* 120 (1973) (condemning "blackmail settlements"), *quoted in In re Rhone–Poulenc Rorer Inc.*, 51 F.3d at 1298. On the other hand, trial courts must set enough cases for trial to ensure that those cases that do not settle will be reached on a timely basis. Plaintiffs in asbestos suits who do not survive their wait for a trial date will be denied justice. In recognizing this reality, we also recognize that there is some tension between the principle of law that a court has no discretion to consolidate claims for trial when that will result in an injustice, *see Womack v. Berry*, 156 Tex. 44, 291 S.W.2d 677, 683 (1956), and the possibility that an abuse of discretion in joining many disparate claims may evaporate before trial if cases were to settle.

We emphasize, however, that once the trial date arrives, a trial court should reassess the claims that have been aggregated to make certain that the requisite commonality is present and that the sheer number of claims, parties, or worksites will not overwhelm or confuse the jury. The lesson learned by the court in *Cain v. Armstrong World Industries* bears repeating: "The 'Try-as-many-as-you-can-at-one-time' approach is great if they all, or most, settle; but when they don't, and they didn't here, [the plaintiffs] got a chance to do something not many other civil litigants can do—overwhelm a jury with evidence." 785 F.Supp. 1448, 1457 (S.D.Ala.1992).

The Maryland factors are designed to assist courts in determining if the consolidation of claims is likely to prejudice or confuse the jury. In some cases, the probability that prejudice or confusion will result may be apparent when only one factor is examined. It may be that the number or diversity of worksites, for example, would create such confusion that it would be an abuse of discretion to consolidate. In other cases, no single factor may clearly indicate that prejudice or confusion is probable, but when the evidence that will be presented is considered in the aggregate, the cumulative effect would result in an unacceptably high risk of prejudice or juror confusion. In the final analysis, the

dominant consideration in every case is whether the trial will be fair and impartial to all parties.

 This case presents a close call. On balance, however, we cannot conclude that the trial court abused its discretion because the record is silent with regard to many aspects of the Maryland factors. In utilizing the Maryland factors, we caution that they are not exclusive and may not be the best indicia in other types of mass tort litigation. For example, see *In re Bristol–Myers Squibb Co.*, 975 S.W.2d 601 (Tex.1998), which we also decide today. They are, however, appropriate in this case:

## 1) Worksites

 As already noted, there is not a single worksite at issue, and the worksites are not of the same type. Of the twenty-two workers, eleven had been on the premises of only one defendant, six worked at the premises of two defendants, four worked at the premises of three defendants, and one worked at the premises of four defendants. It would be difficult for a jury to keep track of where and when each of the twenty-two plaintiffs were allegedly exposed to asbestos even if the sites of exposure were limited to those of the five defendants. But the matter is further complicated by the fact that there are at least forty-one other sites at which one or more of the workers allegedly was exposed to materials that contained asbestos. It is questionable whether, in determining causation and liability, jurors could reach reasoned decisions regarding the extent to which each worker was exposed to asbestos fibers at each site.

A risk of juror confusion is present in this case even if the trial court were to utilize techniques that have seemed to lessen confusion in other asbestos cases, such as providing notebooks with charts and undisputed facts categorized for each worker, allowing jurors to take notes, and submitting jury issues and instructions tailored to each plaintiff. *See, e.g., Malcolm v. National Gypsum Co.*, 995 F.2d 346, 352 (2d Cir.1993) (holding "that the sheer breadth of the evidence made [such] precautions feckless in preventing jury confusion"); *see also Cain*, 785 F.Supp. at 1455.

 The fact that these are premises cases in which the workers were employed by independent contractors could further complicate the factual inquiries. The responsibility for conducting a task in a safe manner rests with the independent contractor and not the premises owner or occupier " 'where the activity is conducted by, and is under the control of an independent contractor, and where the danger arises' out of the employees' performance of the task." *Exxon Corp. v. Quinn*, 726 S.W.2d 17, 19–20 (Tex. 1987) (quoting *Abalos v. Oil Dev. Co.*, 544 S.W.2d 627, 631 (Tex.1976)). While premises cases such as these hold the potential for juror confusion because of the fact issues that may arise with regard to each individual worker and his employer, the record is devoid of any evidence whether disputed fact issues exist regarding the right of control by an owner or occupier of the premises or whether the injured party or his employer created the alleged premise defect. Nevertheless, on balance, the diversity and sheer number of worksites weigh against consolidation.

## 2) Similar Occupations

 The twenty-two individuals allegedly exposed to materials that contained asbestos were engaged in a wide variety of occupations, and therefore, some may have had more intensive exposure to asbestos than others. Decisions that have applied the Maryland factors indicate that a disparity in occupations weighs against consolidation. *See, e.g., Malcolm*, 995 F.2d at 351–52. We agree that if the nature or extent of exposure qualitatively varied among the different occupations, this would be significant. However, the record is silent as to whether these various occupations resulted in differing exposure levels, and we cannot simply presume that material differences exist.

## 3) Time of Exposure

 This factor has two aspects, the dates on which exposure occurred and the length of exposure. The dates on which each worker came into contact with materials that con-

tained asbestos and the length of that contact varies substantially from worker to worker and from worksite to worksite, including worksites owned or occupied by more than forty entities that are not parties to this suit. The earliest date of exposure alleged regarding any of the five defendants is 1946, and the latest is 1979. Moreover, at least one worker was exposed as early as 1941 at a site that was not owned or occupied by any defendant in this case, and another worker was exposed as late as 1981 at a site other than those owned by the five defendants. As already noted, the lengths of contact with asbestos-containing materials range from thirty-eight years to less than two years.

Although logically one would suspect that the state of a given defendant's knowledge about asbestos-containing products would be different at different points in time and that the evidence regarding causation would vary depending on the length of exposure and the dates of exposure, the record is silent on these matters. Defendants argue that the varying dates and degrees of exposure are significant, but the record provides no evidence of how or why. We cannot say, based on this record, that evidence admissible and probative against some defendants would be inadmissible and unduly prejudicial as to others or that the jury would be confused by the fact that different workers were exposed at different points in time and for different lengths of time.

### 4) Disease types and types of cancer

■ The courts that have considered the question of consolidation or separate trials in asbestos litigation have focused on whether the diseases alleged have the same or similar etiologies. The diseases allegedly suffered by the twenty-two workers in this case run the gamut from mesothelioma at one end of the spectrum to pleural thickening at the other and include asbestosis and lung cancer. Again, one might surmise that there are indeed differences in the etiologies of these conditions, but we cannot say that the trial court abused its discretion on the basis of surmise. The record in this case contains no stipulation, expert testimony, or affidavits

stating that the evidence regarding these various diseases will vary significantly.

### 5) The living and the deceased

■ Some courts have expressed concern that permitting the consolidation of claims by living workers with claims of the families of deceased workers would unduly prejudice the trial because there is a danger that the claims regarding deceased workers or those who have life-ending diseases will boot-strap the claims of workers who do not have fatal conditions:

> "[T]he presence of wrongful death claims and personal injury actions in a consolidated trial is somewhat troublesome.... [T]he dead plaintiffs may present the jury with a powerful demonstration of the fate that awaits those claimants who are still living."

*Malcolm*, 995 F.2d at 351–52 (alterations in original) (quoting *In re Joint E. & S. Dists. Asbestos Litig.*, 125 F.R.D. 60, 65–66 (E. & S.D.N.Y.1989)).

This concern has considerable force when the types of diseases suffered by the workers vary and it is disputed whether these diseases are likely to result in death. However, when all of the claimants suffer from an inevitably fatal disease, the prejudice from consolidating the cases of living claimants with those of decedents generally diminishes. The record does not inform us whether the prognoses for pleural thickening, asbestosis, mesothelioma, and lung cancer differ among the twenty-two surviving workers or whether there is a substantial dispute about the prognoses of those who suffer from any of these diseases.

■ The remaining Maryland factors, which are the status of discovery and whether the workers or their families are represented by the same counsel, are not at issue and favor a single trial. However, we agree with the Second Circuit that these factors are far less important than the other considerations identified by the Maryland criteria. *See In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 374 (2d Cir.1993).

■ At least one other consideration should be added to the Maryland factors in

asbestos litigation and that is the type of asbestos-containing product to which the worker was exposed. In some products, the asbestos is embedded and fibers are not likely to become loose or airborne. In other products, the asbestos is friable. This, of course, bears on the extent and intensity of exposure to asbestos and could be considered a subset of the worksite or occupation factors. There is no evidence in this record regarding the types of asbestos products that the workers encountered.

 The defendants contend that whether there is evidence that is admissible against one defendant would be inadmissible against others should be given overriding weight. They cite *Lone Star Ford, Inc. v. McCormick*, 838 S.W.2d 734 (Tex.App.—Houston [1st Dist.] 1992, writ denied), in which the court of appeals observed that consolidation is proper only if the claims are "so related that evidence presented will be material, relevant, and admissible in each case." *Id.* at 737. We agree that this is an important consideration in determining if consolidation or separate trials are in order. Use of the Maryland factors assists in identifying evidence that would be inadmissible against a particular defendant but that could come into evidence against another defendant. The prejudicial effect of such evidence should be weighed very carefully, but the fact that some evidence may be inadmissible against some defendants is not necessarily outcome-determinative on the issue of separate trials or consolidation. The degree of prejudice and the potential that the jury would not be able to keep track of what evidence applies to which defendant must be considered.

The ultimate question under our rules of procedure and decisions interpreting them is whether the undisputed facts and circumstances of this case require a separate trial of fewer than the twenty-two claims at issue to prevent prejudice and manifest injustice. *See Womack*, 291 S.W.2d at 683. In this mandamus proceeding, we cannot say, based on this record, that a party's ability to present a viable claim or defense will be vitiated or severely compromised. *See Walker v. Packer*, 827 S.W.2d 833, 843 (Tex.1992). Ac-cordingly, we deny the petition for a writ of mandamus.

HECHT, Justice,filed a dissenting opinion, in which GONZALEZ, Justice, joined.

HECHT, Justice, joined by GONZALEZ, Justice, dissenting.

Having canvassed the reported decisions of every jurisdiction in the United States and correctly concluded that none has ever come close to approving a single trial of as many different claims of injury due to exposure to asbestos against as many separate defendants involving as widely disparate allegations as the district court has done in the present case, the Court still holds that the district court has not been shown to have abused its discretion because defendants did not adduce more proof of likely confusion and prejudice. Requiring additional evidence of confusion and prejudice in mature mass-tort litigation like this is unnecessary. The purpose of the *Maryland* factors that the Court adopts is to determine when prejudice is likely without a mini-trial before the real trial. If defendants' evidence of prejudice in this case is weak—I do not think it is—evidence of the possibility of a fair and impartial trial under the consolidation order in this case is scant, and evidence of any real judicial efficiency or economy to be achieved is nonexistent.

Trying multiple claims in a single trial can avoid unnecessary expense and delay without prejudice to the parties. The rules of procedure provide for consolidation as a useful tool for resolving numerous claims involving common issues. But it cannot simply be presumed, as the district court and this Court have done, that consolidated trials are more efficient and non-prejudicial absent evidence to the contrary. Having shown that some prejudice is likely, absent evidence that prejudice is unlikely and that any real efficiency can be achieved, and most especially, absent any supporting authority from any jurisdiction, defendants are entitled to have the consolidation order set aside. Accordingly, I respectfully dissent.

The Court's impressive survey of case law does not impress the Court itself. The most

complex consolidation of asbestos claims for trial affirmed on appeal involved the claims of twelve workers and their families against one defendant alleging comparable periods of exposure to one product at various sites over forty years.[1] A court that tried the claims of thirteen workers and their families against the same few defendants for exposure to asbestos at a single site granted a motion for new trial following the verdict, concluding that "a process had been unleashed that left the jury the impossible task of being able to carefully sort out and distinguish the facts and law of thirteen plaintiffs' cases that varied greatly in so many critical aspects."[2] Consistently, the Second Circuit reversed a judgment following trial of forty-eight asbestos plaintiffs against twenty-five defendants, concluding that all efforts by the trial court were "feckless in preventing jury confusion."[3] The Court summarizes the other cases correctly when it says: "Generally speaking, it seems that the federal courts have met with success in trying five or fewer claims at a time, but that larger numbers of claims in a single trial have presented problems."[4] The outside limit in the reported decisions is twelve claims against one defendant. The only exception proves the rule. The Second Circuit approved trial of sixty-four asbestos exposure cases[5] only because ninety percent of the exposure occurred at a single worksite "subject to the uniformity in procurement and practice typical of the Navy".[6] The similarity of the workers' claims and their exposure to asbestos at a single site under almost identical conditions was crucial to consolidation of the claims for trial.[7]

Given courts' experience with asbestos-exposure litigation, it is possible to try more products liability claims together if the claims are similar. But the claims in the case before us are against premises owners, not product manufacturers. Defendants' knowledge of the health hazards of handling asbestos vary more widely in claims against premises owners than in claims against manufacturers. Not a single reported decision from any court in the United States supports consolidation for trial of twenty-two claims against five premises owners alleging exposure to asbestos on one or more but not all of defendants' premises, as well as forty-one other work sites, for periods varying from one to thirty-eight years, resulting in injuries ranging from pleural thickening to cancer and death. At least the two decisions disapproving trials of thirteen and forty-eight consolidated claims are to the contrary. The present case with twenty-two consolidated claims against premises owners is far and away the most complex asbestos-exposure case of record. A court abuses its discretion if it acts " 'without regard for any guiding rules or principles.' "[8] When no authority supports the court's decision, and all valid authority contradicts it, the court has abused its discretion.

Defendants have shown not only a lack of supporting authority but a lack of supporting evidence. Evidence that a trial of the consolidated claims would be fair and impartial is contained in two affidavits submitted by plaintiffs' counsel. In one, plaintiff's counsel asserts that he has tried "many consolidated

1. *Owens–Corning Fiberglas Corp. v. Martin*, 942 S.W.2d 712 (Tex.App.—Dallas 1997, no writ).

2. *Cain v. Armstrong World Indus.*, 785 F.Supp. 1448, 1457 (S.D.Ala.1992).

3. *Malcolm v. National Gypsum Co.*, 995 F.2d 346, 352 (2d Cir.1993).

4. *Ante* at 612.

5. *In re E. and S. Dists. Asbestos Litig. (Brooklyn Navy Yard)*, 772 F.Supp. 1380 (E. & S.D.N.Y. 1991), *aff'd in part and rev'd in part* sub nom. *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831 (2d Cir.1992).

6. *Malcolm*, 995 F.2d at 353. *See also Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1006 (2d Cir.1995) (observing that the consolidation in the Brooklyn Navy Yard litigation "would have passed muster"), *vacated on other grounds*, 518 U.S. 1031, 116 S.Ct. 2576, 135 L.Ed.2d 1091 (1996).

7. *Malcolm*, 995 F.2d at 353 (emphasizing that "[b]ecause uniformity is a way of life with the military, the commonality of the . . . cases cannot be overstated.").

8. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex.1998) (quoting *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex.1995)).

asbestos trials over the past seven years, ranging from two or three cases to 289 cases, with an average of 25–30 cases." The large case, it should be noted, was reversed, albeit on grounds other than consolidation.[9] Counsel's affidavit continues: "It is readily apparent from the verdicts that juries give careful individual attention to each plaintiff and make decisions based on the specific evidence introduced by each party." Assuming that the verdicts referred to would make counsel's conclusion readily apparent, those verdicts are not attached to the affidavit or described, other than by counsel's statement that plaintiffs sometimes won and sometimes lost. This evidence is conclusory and entitled to no consideration. In the second affidavit, plaintiffs' counsel asserts that he once tried twenty-five claims in a single trial that was obviously fair and impartial because the jury awarded one claimant $3,337,000 and others less, some as little as $50,000. The affidavit does not describe the nature of the claims or their similarities and differences. Thus, it is also conclusory and should be given no weight. The second affiant also asserts that the evidence common to all consolidated claims is the diagnosis of all plaintiffs' conditions by one of two physicians, Dr. Gary K. Friedman and Dr. Jeff D. Britton—who regularly testify for plaintiffs in asbestos cases[10] —and the knowledge of the dangers of asbestos and industry standards for protection from such dangers. These two facts—that plaintiffs will rely on the same experts they often rely on in such cases, and that exposure to asbestos has long been known to be dangerous to health—do not show sufficient similarities between the twenty-two claims to justify consolidation in a single trial.

Defendants' evidence that a single trial will not be fair is substantial and uncontroverted. Defendants' expert, a psychologist and jury consultant, identified nine differences in plaintiffs' claims that would make it difficult for jurors to separate the evidence as to each plaintiff. The expert testified that joining so many plaintiffs in a single trial would influence jurors to find liability and award damages to all plaintiffs when they would not do so otherwise. Defendants submitted exhibits detailing plaintiffs' work histories and exposures to asbestos. In hearings before the district court, plaintiffs' counsel did not take issue with defendants' counsel's description of the differences in plaintiffs' allegations and evidence regarding plaintiffs' work sites, occupations, times of exposure, and types of disease. Defendants' assertions in motions and hearings that such differences prevent a fair and impartial trial of the twenty-two consolidated claims stand unchallenged by plaintiffs.

The only evidence of efficiency to be achieved by consolidation of twenty-two claims for trial is plaintiffs' counsel's assertion in his affidavit that the consolidated case can be tried in twenty days as compared with eight or nine days apiece to try each claim separately. Of course, consolidating twenty-two claims and trying each claim separately are not the only two alternatives. Nothing in the record indicates that the district court assessed the risk of wasted time and money to the parties and the court if the trial eventually proved to be prejudicial and unfair, or that the court considered the benefits of trying fewer or more similar claims with less risk of prejudice. The court did not explore trying a few typical claims in smaller groups to obtain verdicts that could serve as a basis for settling similar claims. The court did not consider whether evidentiary disputes could be reduced after such trials so as to shorten future proceedings. The only issue the court addressed was how many claims to try at

9. *Owens–Illinois, Inc. v. Chatham*, 899 S.W.2d 722 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd).

10. *See, e.g., Whatley v. Armstrong World Indus., Inc.*, 861 F.2d 837, 844 (5th Cir.1988); *Smith v. A.C. & S., Inc.*, 843 F.2d 854, 856 (5th Cir.1988); *Cole v. Celotex Corp.*, 599 So.2d 1058, 1075 (La. 1992); *Owens–Illinois, Inc. v. Chatham*, 899 S.W.2d 722, 726 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd); *Srite v. Owens–Illinois, Inc.*, 870 S.W.2d 556, 560–563 (Tex.App.—Houston [1st Dist.] 1993), *rev'd sub nom. Owens–Illinois, Inc. v. Estate of Burt*, 897 S.W.2d 765 (Tex.1995); *Fibreboard Corp. v. Pool*, 813 S.W.2d 658, 681– 682 (Tex.App.—Texarkana 1991), *cert. denied*, 509 U.S. 923, 113 S.Ct. 3037, 125 L.Ed.2d 724 (1993); *Pecorino v. Raymark Indus., Inc.*, 763 S.W.2d 561, 575 (Tex.App.—Beaumont 1988), *on reh'g*, 766 S.W.2d 316 (Tex.App.—Beaumont 1989, no writ).

once, and the presumption implicit throughout the hearings before the court was that the more claims that are tried together, the better. The court indicated that after this consolidated trial, the next batch of claims set for trial would be larger.

Obviously, if claims can be tried together in less time than they can be tried separately without prejudice to the parties, then it is more efficient to do so. Rule 174(a) of the Texas Rules of Civil Procedure authorizes consolidation of claims for trial "as may tend to avoid unnecessary costs or delay." But as the risk of prejudice grows due to the confusion in trying multiple claims at once, possible efficiencies of consolidated trials diminish. The burden on the parties and the system caused by reversal on appeal must be considered. As the Court emphasizes, "The rights of the parties to a fair trial cannot be compromised in the name of judicial economy."[11]

In determining the number of claims to consolidate, a court can certainly take into consideration the possibility that some might settle before trial actually commenced, although there is no indication in the present case that the court did so. But as the Court indicates, it would be improper for excessive numbers of claims to be consolidated merely to coerce settlements. Economy cannot be achieved by threatening to try so many claims at once that parties must settle rather than risk long trials and appeals.

Absent any evidence of real economy to be served by consolidating twenty-two claims for trial, absent any showing of how those claims can be tried together without prejudice to defendants, absent any authority from any jurisdiction approving so large a consolidation of such disparate claims, given some contrary authority, and given defendants' unrebutted assertions of prejudice, defendants are entitled to have the consolidation order set aside. To require more evidence of prejudice, as the Court does, encourages more extensive pretrial hearings—mini-trials before trial—to preview the evidence and determine the possibilities of prejudice. In immature mass-tort litigation such hearings may be necessary, but asbestos-exposure litigation is well enough developed that such hearings should not be necessary. Indeed, the *Maryland* factors that the Court applies are distilled from the experience of a number of courts in asbestos-exposure litigation.[12] The purpose of the factors is to identify differences in typical asbestos claims that can result in prejudice and confusion if the claims are tried together. The exhibits to defendants' motion in this case detailing the plaintiffs' various occupations, work sites, times of exposure, and diseases make the likelihood of prejudice, in light of the *Maryland* factors, apparent.

Burgeoning caseloads demand ever more efficient management and disposition techniques, lest the expense and delay of litigation result in a justice system that is unsuited for the very task for which it exists: resolving disputes. But as important as efficiency has become to the justice system, it is not as important as justice itself. Achieving justice in mass-tort litigation requires a careful balancing of legitimate, competing interests: the plaintiff's interest in a reasonably timely resolution of his claim, and the defendant's interest in a fair and impartial trial. From the fact that a number of consolidated asbestos-exposure cases have been tried in Texas and to date appeals have been few, the Court infers that such trials are generally being conducted without prejudice. If that inference is legitimate, today's opinion should encourage trial courts to use care in consolidating cases for trial to minimize prejudice. Despite the Court's denial of relief in this case, it should be clear from the Court's application of the *Maryland* factors that when defendants adduce the evidence the Court finds lacking, the prejudice in trying the twenty-two claims together will be established. The district court would do well to reconsider its consolidation order in light of today's opinion rather than to rely entirely on today's judgment.

---

**11.** *Ante* at 610.

**12.** *In re All Asbestos Cases Pending in the United States District Court for the District of Maryland* (D.Md. Dec. 16, 1983) (en banc) (cited in *Malcolm v. National Gypsum Co.*, 995 F.2d 346, 351 (2d Cir.1993)).